BARRY, Judge.
The defendant was convicted of armed robbery (La.R.S. 14:64) and sentenced as a second felony offender to 35 years at hard labor without benefit of probation, parole or suspension of sentence. He was acquitted on three counts of attempted murder of a police officer (La.R.S. 14:27 and 14:30).
According to trial testimony the defendant waited on the victim’s porch until he parked his car. The defendant pulled a pistol and hit the 85-year-old victim in the head, then stole his automobile. Several hours later the defendant was apprehended in the victim’s car after a high speed chase.
The defendant assigns five errors:
(1) The evidence was insufficient;
(2) The armed robbery charge should have been severed from the attempted murder charges;
(3) The State was permitted to ask the defendant about details of prior convictions contrary to La.C.E. Art. 609.1 C;
(4) The State used the details of prior convictions in its closing argument;
(5) The jury instructions as to “reasonable doubt” were erroneous.
There was reversible error as to assignment (3), the violation of C.E. Art. 609.1 C. We pretermit the other arguments.
PRIOR CONVICTION TESTIMONY
The defendant took the stand and defense counsel questioned him about his pri- or convictions:
May, 1977 Guilty plea to receiving stolen goods: 60 days
Nov., 1977 Guilty plea to receiving stolen goods: 3 months
May, 1978 Guilty plea to misdemeanor theft: 4 months
March, 1980 Guilty plea to purse snatching: 3 years
March, 1980 Guilty plea to possession of Talwin (sentence not given)
July, 1982 Distribution of Talwin: 5 years
As to the 1980 convictions, defense counsel Ms. LeBoeuf asked:
Q A couple of years later in March of ’80, a simple robbery. Tell me about that.
A That was something from a purse snatching.
* * * * * *
Q Did you plead guilty to that and get three years?
A Yes, I did.
Counsel then questioned him about the drug conviction which was related to the purse snatching. Counsel asked the quantity of drugs and the defendant approximated the number of pills involved.
The defendant admitted that he currently “deals drugs” like cocaine ($10 and $20 rocks) and Talwin. He also said that “on different occasions” he “acts as a fence.” He denied committing the subject armed robbery and claimed he obtained the victim’s car as part of a cocaine deal. He failed to produce evidence of ownership.
During cross-examination assistant district attorney Ms. McElwee questioned the defendant:
Q In May of 1977, you received stolen property, correct?
A Yes, ma’am.
Q You pled guilty to that. I believe that was a battery charger. Do you remember that?
A A battery charger?
Q Battery charger.
A No, ma’am, it wasn’t.
BY MS. LeBOEUF:
*1168 Objection, Your Honor. May we approach?
(BENCH CONFERENCE)
BY MS. McELWEE:
Q 1977, wasn’t that a battery charger that you received?
A 1977? I can’t remember that.
Q Okay. You had another conviction, possession of stolen property, 1977. Do you remember that that was — Do you remember what you had possession of in that case?
A Possession of what?
Q There was an October, October 1977, another charge, possession. of stolen property. Do you remember what you received that was stolen in that case?
BY MS. LeBOEUF:
Your Honor, I make the same objection, and I’m going to make it a continuing objection under the Code of Evidence 609(C). I do not feel this is a proper question.
BY THE COURT:
All right. I would overrule that.
BY MS. LeBOEUFF:
Note my exception, please.
BY MS. McELWEE:
Q Do you remember what you possessed in that case that was stolen property?
A No, ma’am, I really don’t.
Q Would it help your memory if I told you, you possessed a car and it had a flat tire on the Mississippi River Bridge when the police caught you. Does that help you remember?
A I was not in possession of that car. It was not in my possession. I was just merely catching a ride with someone.
Q So you were just catching a ride in that one. So you pled guilty to that case because you were just catching a ride?
A No, ma’am, I did not. I was released on that.
Q You didn’t plead guilty to that charge?
A No. No, I didn’t.
BY MS. LeBOEUF:
Your Honor, now she’s questioning him about arrests?
BY THE COURT:
She’s asking him about a conviction.
BY MS. LeBOEUF:
I object to that.
BY THE COURT:
I’m going to overrule your objection.
BY MR. CAMPBELL [defense co-counsel]:
What was the date and time of the conviction that she’s requesting?
BY MS. McELWEE:
This is pled guilty [sic], November 21st, 1977.
BY MS. McELWEE:
It was a misdemeanor charge that you pled guilty to and received 60 days?
A Yes, ma’am.
Q Is that correct?
A That wasn’t a car.
Q In 1979 you have a conviction for possessing Talwin. Now, what is Tal-win?
A That’s another form of drugs.
Q What does that do for you?
BY MR. CAMPBELL:
Your Honor, I would object. This is exactly what I think is beyond the bounds of this statute.
BY THE COURT:
As to what Talwin does for you, I will sustain his objection to that.
BY MS. McELWEE:
All right. 1982 you have a conviction for possession of drugs with intent— distribution of Talwin. You got five years for that. How long did you stay in for that one, from 1982?
A Five years.
Q You did the five years for that?
A Yes, ma’am.
Q So you got out of jail in 1987?
A Yes, ma’am.
Q Back in ’79, October of ’79, do you remember the purse snatching that you pled guilty to?
A Yes, ma’am, I do.
Q And do you remember in that purse snatching that you approached a 60- *1169 year-old woman from behind, grabbed her purse. When she wouldn’t give it to you, you hit her and struggled with her until she finally let go of the purse?
BY MS. LeBOEUF:
Objection. Your Honor, I object.
BY MS. McELWEE:
Q Do you remember that?
BY THE COURT:
Overruled.
BY MS. McELWEE:
Q Do you remember that?
A Well, the only reason why I pleaded guilty to that is because I didn’t have any — I didn’t have — I didn’t really know anything about the law, and I more or less was scared. At the time, I didn’t even do that, you know.
Q So—
A And I was caught for it, and I pleaded guilty, like I said. I didn’t have any help.
Q Okay. So you’re saying that you pled guilty because you didn’t know any better, but you did it, right?
A If you realize that I was — I was later released on that charge. And I came up here to, you know, for questioning or something, and I was re-booked for that; and I had some drugs on me at the time.
Q We’re talking about the purse snatching now?
A Yes, ma’am, we are.
Q So you’re saying you didn’t do that?
A No, I didn’t. By me having the drugs — more or less it was a deal. The drug charge — I was caught with the drugs. And when I was — Like I said, I was released on that charge, and by me coming back up here and being questioned by the D.A. and being caught with these drugs, that was the whole deal for me to cop out for the purse snatching and for the drugs—
Q But you did—
A —at the same time.
Q You did commit the purse snatching of a 60-year-old woman?
A No, ma’am, I did not.
Q You did not?
A No, I didn’t. I was released on that.
Q Pardon me?
A I was released and some kind of way I was re-booked.
Q Mr. Singleton, this is a Plea of Guilty form—
A I know that.
Q —for purse snatching. Now, is this your name right here (indicating)?
A Yes, ma’am, it is.
Q Now, are those your initials?
A I’m not denying the fact that I didn’t cop out to this charge. I’m trying to explain to you why I copped out to that.
Q Okay. Let me ask you this—
A It was in the agreement.
Q Do you realize that this is an oath that you take in a court of law, an understood oath—
BY MS. LeBOEUF:
Your Honor, we are retrying these pri- or charges. This is just what I am objecting to.
BY MS. McELWEE:
He is denying that he committed—
BY THE COURT:
Don’t argue among yourselves. Make your objection. The objection, Ms. Le-Boeuf, is overruled.
Proceed, Ms. McElwee.
BY MS. McELWEE:
Q Mr. Singleton, what does this say right here, right here (indicating)?
A I told you, I did cop out to that. I’m merely trying to explain it to you why that bargain had came up, how did it came up [sic].
Q What does this line say right here (indicating)?
A This also says a “plea.” This is a plea of guilty.
Q Correct. To the crime of—
A A waiver of rights, to waive the rights.
Q To the crime of — What does that say (indicating)? Can you read that?
A Purse snatching, yes.
*1170 Q All right. Now, what does this line say right here (indicating)? ‘I am’—
A I can’t read too good.
A ‘I am entering a plea of guilty to this crime because I am, in fact, guilty of this crime.[’] This was under oath before a judge. You swore to tell the truth before Judge Becker.
A I’m not denying that, Miss—I forget your name.
Q That’s okay.
A I’m not denying that. I’m just merely trying to get you to understand how did that happen?
Q All right. So you would also deny that a witness saw you grab this lady’s purse and struggle with her and then run?
A Well, I don’t know if they even ever had a witness.
BY MS. LeBOEUF:
Your Honor—
BY MR. CAMPBELL:
Your Honor, he’s said three times he’s not denying the offense. She’s had plenty of—
BY THE COURT:
As to that particular question, I’ll sustain their objection.
LAW AND ANALYSIS
Under earlier jurisprudence, once a defendant took the stand his credibility could be impeached (like any witness) by showing that his general reputation for truth and moral character was bad or that he had been convicted of a crime. The State was allowed to cross-examine the defendant as to details of a prior conviction to establish the nature of the offense. State v. Elam, 312 So.2d 318 (La.1975); State v. Jackson, 307 So.2d 604 (La.1975).
However, C.E. Art. 609.1 (effective January 1, 1989) “Attacking credibility by evidence of conviction of crime in criminal cases” provides in pertinent part:
A.General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
The Comment following the article states in pertinent part:
Paragraph C modifies prior law. See State v. Jackson, 307 So.2d 604 (La.1974); State v. Oliver, 387 So.2d 1154 (La.1980).
In State v. Tassin, 536 So.2d 402, 409, n. 15 (La.1988), cert. denied 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989), the court allowed the admission of the defendant’s prior conviction records which showed the nature of the offense, even though the defendant admitted the convictions on direct examination. The court applied La. R.S. 15:495, the law prior to La.C.E. Art. 609.1 and relied on Jackson. The court noted that the new C.E. Art. 609.1(C) would restrict such evidence unless the defendant denies a conviction, testifies to exculpatory facts, or when the probative value outweighs the danger of unfair prejudice or jury confusion. Commentators suggest that the use of “may be admissible” means that even in those listed instances admissibility is not automatic. The last exception creates a balancing test in which probative value refers to relevancy of the evidence as to the credibility of the defendant.
*1171 When the accused is the witness, ‘unfair prejudice’ will usually consist of inflaming the emotions of the jury against the accused in a manner unrelated to credibility, or in raising inferences of his propensity toward crime in a manner prohibited by Article 404 [general inadmissibility of character evidence]. Unlike prior law, therefore, details of the offense are not generally admissible simply to show the ‘true nature’ of the previous crime. For the details to be admissible, the requirements of Article 609.1(C) must be met.
Pugh, Force, Rault, and Triche, Handbook on Louisiana Evidence Law 278 (1991).[1]
During cross-examination the State grilled the defendant about details of his prior convictions, after the defendant admitted those convictions on direct examination. The defendant did not deny his convictions or attempt to explain or introduce exculpatory evidence as to those convictions during direct examination. The questions by defense counsel relating to the number of tablets in the drug convictions, which the State claims “opened the door” was an attempt to jog the defendant’s memory as to that charge and sentence.
The State proceeded to question the defendant about the details of his guilty pleas, especially the purse snatching offense which involved a 60-year-old woman whom the defendant hit as she struggled to keep her purse. Prior to those questions, the defendant said he remembered the purse snatching plea. The defendant’s attempts to explain why he pleaded guilty occurred after repeated, improper questions by the State. The probative value of the cross-examination in general and the purse snatching plea in particular fails to outweigh the substantial prejudice to the defendant and is prohibited by La.C.E. Art. 609.1 C. The cross-examination was prejudicial in this jury trial.
The conviction and sentence is reversed and the matter remanded for a new trial.
REVERSED; REMANDED

. We note the authors’ statement that the holding in State v. Johnson, 550 So.2d 205 (La.App. 4th Cir.1989), “citing the Code of Evidence and apparently taking a contrary position, appears to be in error.” Handbook on Louisiana Evidence at 278. Johnson’s 1985 trial pre-dates the effective date of the Code of Evidence. Reference to the new code (effective January 1, 1989) only months prior to rendition of that opinion on September 14, 1989, was incorrect. However, the Johnson panel correctly utilized the applicable law (Jackson and its progeny) to conclude that the cross-examination on details of the defendant’s prior drug offense was proper.