683 So.2d 1281 (1996)
STATE of Louisiana, Appellee
v.
Billy DeWayne POWELL, Appellant.
No. 28788-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1996.
Rehearing Denied December 5, 1996.
*1283 Lewis A. Jones, Ruston, for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, and John L. Sheehan, Assistant District Attorney, for Appellee.
Before HIGHTOWER, STEWART and CARAWAY, JJ.
CARAWAY, Judge.
Defendant, Billy DeWayne Powell, was convicted by a jury of the Second Degree Murder of Derrick Abney pursuant to LSA-R.S. 14:30.1. The court sentenced Powell to life imprisonment without benefit of probation, parole, or suspension of sentence. He now brings this appeal urging six assignments of error. For the reasons that follow, we affirm.
On Thursday evening, April 6, 1995, the defendant and two friends, Latrese Gandy and LaQoanna Spriggs, went to the "Ponderosa Club" in Lincoln Parish. Just before 10 p.m., Powell and another patron, Derrick Abney, got into a heated argument. After some pushing and shoving, Powell pulled out a pistol and shot Abney in the head, killing him instantly. The defendant left the scene but was arrested the next day by Deputy Kenneth Wesley of the Lincoln Parish Sheriff's Department. Powell was charged with the Second Degree Murder of Derrick Abney.
Deputy Wesley learned of the murder involving Powell on Thursday evening shortly after its commission. He had been investigating a complaint by the victim, Derrick Abney, that on March 30, Powell and another man, Derrell Carter, got into an argument with Abney over $100 that Abney had allegedly stolen from Carter. When the argument became physical, Abney ran away from the two men. Powell then fired 3 or 4 shots at the fleeing Abney, one of which struck Abney in the hip.
The defendant testified at trial, and he admitted that he killed Abney at the Ponderosa Club, but he claimed that the shooting was done in self-defense after he saw Abney reaching into his clothing for what he believed to be a weapon. Powell testified that he had heard rumors that Abney had threatened to kill him if he got the chance. Over defense objections, Powell admitted that the threats made by Abney against his life were probably due to the fact that Powell had shot Abney the week before. Several witnesses to the shooting testified that they did not see Abney make any threatening movement. The jury rejected Powell's exculpatory story and convicted him as charged. We now consider the assignments of error defendant raises on appeal in the order of their presentation.
Assignment of Error 1: The court erred in allowing evidence of the defendant's prior criminal record despite the state's untimely response to the defendant's discovery request.
On June 5, 1995, the defense filed a discovery motion requesting, among other things, the following order:
Pursuant to C.Cr.P. art. 717, the defendant seeks an order compelling the District Attorney or the appropriate law enforcement agency to furnish to defendant a copy of any record of his/her criminal arrests and convictions that is in their possession or custody.
On the morning of October 25, after the jury had been impaneled for trial, the state gave defense counsel a copy of a report showing two prior arrests of the defendant. Heretofore, in two prior responses to the discovery motion on June 12 and October 20, the state had made no mention of prior criminal arrests or convictions. The afternoon of October 25, the state gave the defense a copy of a formal amending and supplemental discovery answer that indicated that Mr. Powell had been convicted of aggravated battery in 1992 and simple battery in 1992. Defense counsel objected in open court to the responses as being untimely.
The state responded that it just did not have the information until that morning. It *1284 also stipulated that it would not use the evidence of prior convictions except for impeachment purposes if Mr. Powell took the stand. The assistant district attorney stated: "We don't intend to use the prior conviction and the prior shooting in any sort of what would be called an old Prieur hearing, anything of that nature."
Prior to commencing testimony at trial on October 26, 1995, the court ruled that the evidence of the prior convictions could be used by the state. We specifically note, however, that no Prieur hearing was held, nor did the court rule that the evidence of prior crimes was admissible for one of the express purposes stated under LSA-C.E. art. 404(B).
At trial, Powell took the stand to testify on his own behalf. Anticipating that the state would use the prior convictions to impeach his credibility, on direct examination Powell testified regarding the prior convictions. Defendant complains on appeal that the state did not timely provide the information, and the trial court's admission of the evidence was in error. Specifically, the defendant argues that "the failure of the State to request the information, which was available to it from the very beginning, until so close a time as the actual trial, thus preventing the defense from adequately preparing, defeats the purpose of the discovery rules."
In State v. Baldwin, 448 So.2d 834, 837 (La.App. 2d Cir.1984), this court stated:
The failure of the state to obtain a rap sheet prior to such questioning is of no effect. La.C.Cr.P. art. 717 provides that upon motion of the defendant, the court shall order the district attorney or the appropriate law enforcement agency to furnish to defendant a copy of any record of his criminal arrests and convictions that is in their possession or custody; accordingly, the defendant was entitled to a copy of any rap sheet or record of his criminal arrest and conviction in the possession of the state. See State v. Clement, 368 So.2d 1037 (La.1979). However, there is no duty on the part of the state to disclose information which it does not possess. State v. Alpine, 404 So.2d 213 (La.1981). Accordingly, exclusion of the evidence, a sanction of La.C.Cr.P. art. 729.5 is not a sanction which is available where there is nothing [here, a rap sheet] to disclose.
Further, in State v. White, 430 So.2d 174, 181 (La.App. 2d Cir.1983), this court said:
The discovery article [La.C.Cr.P. art. 717] does not require that the district attorney's office obtain a copy of the defendant's criminal record if they are not in possession of one.
See also State v. Goza, 408 So.2d 1349, 1352 (La.1982) and State v. Rice, 626 So.2d 515, 520 (La.App. 3rd Cir.1993).
Facts similar to those in Baldwin are present in this case. The state did not possess the information about the defendant's convictions until the trial began. Mr. Sheehan, the assistant District Attorney, stated that he was not aware of any prior convictions until that morning when Deputy Wesley mentioned it. They checked it out and discovered a city court conviction and a felony conviction in Caldwell Parish. Mr. Sheehan stated that his office was unaware of the convictions because they were out of their jurisdiction.
In State v. Neal, 535 So.2d 757, 761 (La. App. 2d Cir.1988), this court stated:
The district attorney is not required to inform the defendant of the state's intent to offer evidence of convictions to impeach the defendant's testimony. La.C.Cr.P. art. 720.
At the time Neal was decided, LSA-C.Cr.P. art. 720 expressly stated that the district attorney need not notify the defendant of evidence of offenses used for impeachment purposes. LSA-C.Cr.P. art. 720 has deleted this express provision but still does not require notice of "other crimes for which the accused was previously convicted" so long as that evidence is not to be used pursuant to LSA-C.E. art. 404(B).
In light of Baldwin, White and Neal, the trial court correctly ruled that the state's discovery response was timely. This assignment of error is without merit.
Assignment of Error 2. The court erred in allowing testimony regarding the facts and *1285 circumstances surrounding the defendant's prior conviction.
On direct examination, when asked whether he had ever been convicted of a crime, Powell admitted that he was convicted of aggravated battery in 1992 and sentenced to 5 years suspended sentence and 5 years probation. He also testified that he had been convicted of simple battery in Ruston in 1992 or 1993 and given six months probation. These were the two crimes on the report supplied to the defense the day before trial testimony began.
When the prosecutor began cross-examination of the defendant, he questioned the defendant about his prior aggravated battery conviction. After eliciting answers about the date and sentence for this conviction, the prosecutor asked Powell what type of weapon he used in the prior crime. Defense counsel immediately objected to questioning about the details of the offense on the grounds that the question was outside the scope of LSA-C.E. art. 609.1.[1] After the jury was removed, the state argued that it could go into the details of the prior conviction under LSA-C.E. art. 609.1 C(3), stating that the evidence was probative to show the similarity of the prior crime to the crime for which the defendant was being tried, and was not outweighed by any unfair prejudice. To use the prosecutor's words, the details of the prior conviction indicated that the present offense was a "signature" crime.
Over the defendant's objection, the judge ruled that Article 609.1 was not applicable in this instance, this article being limited to evidence of prior convictions in connection with impeachment of the credibility of a witness. Rather, the judge found that LSA-C.E. art. 404(B)[2] governed this instance to allow evidence of other crimes, wrongs or acts for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that is part of the res gestae. He allowed the questioning to proceed. The testimony elicited by the prosecution's subsequent questions informed the jury that the defendant had used a small handgun to shoot a man at close range in a nightclub in the 1992 aggravated battery.
On appeal, defendant argues that the trial court committed reversible error by allowing the state to elicit testimony from the defendant regarding the details of this prior offense.[3]
*1286 By testifying at trial, the defendant subjected himself to cross-examination regarding his prior convictions for the limited purpose of impeaching his credibility. LSA-C.E. art. 609.1. Recognizing this rule, the defendant admitted on direct examination his prior convictions, which were those that the state had earlier informed the defendant it would use solely for impeachment purposes. The defendant also testified to the pertinent details of the convictions, namely, the fact of conviction, the name of the offense, the date thereof and the sentence imposed. LSA-C.E. art. 609.1(C). Since the defendant did not deny the conviction or testify to exculpatory facts surrounding the conviction, the details of the prior aggravated battery conviction were not admissible under the exceptions contained in 609.1 C(1) and (2). Nor does the state contend as much. Rather, the state contends in its brief that the details of the prior conviction were admissible under the third exception, that is, "to show the true nature of the offense: (3) when the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury." LSA-C.E. art. 609.1 C(3). This argument is without merit.
Paragraph C of LSA-C.E. art. 609.1 modifies the prior law regarding admissibility of details of prior convictions pronounced in State v. Jackson, 307 So.2d 604 (La.1975) and State v. Oliver, 387 So.2d 1154 (La.1980). See Comments to LSA-C.E. art. 609.1. In State v. Tassin, 536 So.2d 402 (La.1988), cert. denied 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989), the supreme court allowed the admission of the defendant's prior conviction records which showed the nature of the offense, even though the defendant admitted the convictions on direct examination. In that case, the supreme court applied LSAR.S. 15:495, which was the law prior to LSA-C.E. art. 609.1, and relied on State v. Jackson, supra. In a footnote, however, the Tassin court indicated that the new C.E. art. 609.1(C) would restrict such evidence unless the defendant denies the conviction, testifies to exculpatory facts, or when the probative value outweighs the danger of unfair prejudice or jury confusion. Tassin, supra, note 15 at 409.
Commentators have suggested that the last exception creates a balancing test in which probative value refers to relevancy of the evidence as to the credibility of the defendant and the use of "may be admissible" means that even in those listed instances admissibility is not automatic. See Pugh, Force, Rault, and Triche, Handbook on Louisiana Evidence Law, p. 370 (1996). See also, State v. Singleton, 589 So.2d 1166 (La. App. 4th Cir.1991) where the court held that unlike prior law, details of the offense are not generally admissible simply to show the `true nature' of the previous crime. For the details to be admissible, the requirements of Article 609.1(C) must be met.
Based upon our review of Article 609.1 and the authority cited in the foregoing discussion, we likewise agree that the third exception of Article 609.1(C) allows cross-examination into the details of a prior conviction only where the issue of the witness' credibility is raised and the details of the prior conviction are probative in impeaching his testimony and not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. For example, if a defendant, previously convicted of aggravated battery, testified at trial that he had never used a gun, the details of the prior conviction showing that he used a gun in that offense would be probative regarding the credibility of the witness, and such cross-examination into that detail of the prior crime may be permissible under Article 609.1 C(3).
In this instance, the trial court's ruling regarding the admissibility of the details of the prior aggravated battery conviction was not based upon the court's view that the evidence was relevant to an issue of the credibility of the witness, thereby implicating the exception under Article 609.1 C(3). Rather, the court relied upon LSA-C.E. art. *1287 404 B. We agree that the prosecution could not use the evidence of the details of the prior battery conviction to impeach the credibility of the defendant in this instance. Therefore, the state's argument that cross-examination regarding the details of defendant's prior conviction was proper under LSA-C.E. art. 609.1 is without merit.
The state next contends, and the trial court so ruled, that the details of the prior convictions were permissible under LSA-C.E. art. 404(B), cited supra at note 2. Ordinarily, evidence of other crimes for purposes other than impeachment is inadmissible except in certain circumstances and provided certain safeguards are met. In State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 99, the Louisiana Supreme Court gave this overview of the use of "other crimes" evidence:
Evidence of other crimes is generally inadmissible in the guilt phase of a criminal trial unless the probative value of the evidence outweighs its prejudicial effect and unless other safeguards are met. State v. Code, 627 So.2d 1373 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); State v. Bourque, 622 So.2d 198 (La.1993); State v. Silguero, 608 So.2d 627 (La.1992). This general rule ensures that a defendant who has committed other crimes will not be convicted of a present offense simply because he is perceived as a "bad person," irrespective of the evidence of his guilt or innocence. A conviction should be based on guilt and not on character. Bourque, 622 So.2d at 233; State v. Hamilton, 478 So.2d 123 (La.1985), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). One important safeguard is advance notice that such other crimes evidence will be offered. This prevents surprise and allows a defendant an opportunity to prepare a meaningful defense. Bourque, 622 So.2d at 233; Hamilton, 478 So.2d at 129; State v. Prieur, 277 So.2d 126 (La.1973).
In the instant case, the trial court allowed the other crimes evidence in under the rubric of LSA-C.E. art. 404(B). Under that article, evidence of other acts is allowed to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." See note 2 at p. 1285, supra. One of these factors must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. State v. Jackson, 625 So.2d 146 (La.1993).
In Jackson, supra at 149, the high court restated the well-established requirements for the admissibility of "other crimes" evidence:
The state is required to prove that the defendant committed these acts by clear and convincing evidence. State v. Davis, 449 So.2d 466 (La.1984); LSA-C.E. art. 1103. The state must, within a reasonable time before trial, provide written notice of its intent to use other acts or crimes evidence and describe these acts in sufficient detail. Likewise, the state must show that the evidence is neither repetitive nor cumulative, and is not being introduced to show that the defendant is of bad character. The court must, at the request of the defendant, offer a limiting instruction to the jury at the time the evidence is introduced. The court also must charge the jury at the close of the trial as to the limited purpose for the other crimes evidence and that the defendant cannot be convicted for any crime other than the one charged or any responsive offenses to it. State v. Prieur, 277 So.2d 126 (La.1973).
In this case, the record shows that the state had the evidence in its possession on October 25 and throughout its case in chief, and it elected not to use it for a substantive purpose under Article 404(B) to show a common plan, pattern, system or "signature crime." As previously noted, when the state argued on October 26 for the admissibility of the evidence for possible impeachment purposes, the prosecutor stated:
"We don't intend to use the prior conviction and the prior shooting in any sort of what would be called an old Prieur hearing, anything of that nature."
*1288 And again, when arguing for its admissibility under Article 609.1 C(3) after the defendant testified, the prosecutor stated:
"I believe the state could have gotten into this in its case in chief if we had chosen to, but due to the fact that we received the information late, we advised counsel we would not go into it in the case in chief, but now that Mr. Powell has testified, we're on cross and rebuttal. I mean, we're on cross-examination so I feel like we can get into it. The probative value is great."
Thus, the state clearly failed to give any notice before trial of its intent to use the evidence of other crimes for the purposes cited in Article 404(B). Based upon its initial representation to the trial court that it only intended to use the evidence for purposes of impeachment, we believe that the state waived its right to use this evidence in its case-in-chief to show that the defendant had acted according to a "pattern," or that the crime was a "signature crime," if, in fact, this element falls within the scope of Article 404(B) and has some relevance in this case.
In determining whether reasonable notice was given to the defendant of the state's intent to use other crimes evidence, the court must first consider whether the defendant had sufficient time to adjust his trial strategy. State v. Tennant, 352 So.2d 629 (La.1977). State v. Baker, 535 So.2d 861 (La.App. 2d Cir.1988). Although we have held that notice one day prior to trial did not constitute prejudicial surprise where the state filed the notice the same day that the witness to the prior bad act came forward, see State v. Free, 26,267 (La.App.2d Cir. 9/21/94), 643 So.2d 767, the notice to the defendant in this instance did not come until the state began its cross-examination and after trial had begun. Moreover there was no pretrial Prieur hearing. State v. Allen, 26,547 (La.App.2d Cir. 12/7/94), 647 So.2d 428; State v. Tolliver, 621 So.2d 17 (La.App. 2d Cir.1993).
We therefore conclude that, once the defendant elected to testify, the issue of the use of the evidence of the conviction and its details for the sole purposes of impeachment of the defendant's credibility was the only issue before the court. Article 609.1 as discussed above governed that issue, and the details of the crime should have been ruled inadmissible.
For these reasons, we hold the trial court clearly erred in allowing the cross-examination of the defendant regarding the aggravated battery under LSA-C.Cr.P. art. 720 and LSA-C.E. art. 404(B) in the absence of the notice required by Article 720 and Prieur.
The question remains whether this error by the trial court requires reversal. LSA-C.Cr.P. art. 921 provides:
A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.
In State v. Johnson, 94-K-1379 (La.11/27/95), 664 So.2d 94, the trial court erroneously allowed evidence of other burglaries under Article 609.1 after the defendant admitted to only one burglary conviction. Although the defendant was charged with six burglaries on the bill of information introduced into evidence, it turned out that due to a plea arrangement, he pled to and was convicted of only one burglary. Because the Article 609.1 exception to the "other crimes" prohibition allows only convictions into evidence, the trial court had clearly erred. The sole question was whether reversal was required under LSA-C.Cr.P. art. 921.
In examining Article 921 and the history of this codified harmless error rule, the supreme court stated that the erroneous introduction of other crimes evidence is a trial error, i.e., an error which occurs during the case's presentation to the trier of fact, which may be quantitatively assessed in the context of the other evidence. As such, it may be reviewed for harmless error.
The court noted that the inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." State v. Johnson, supra at 100, citing Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The Johnson court went on to hold that because there were two eyewitnesses who testified to the stabbing at *1289 issue and who personally knew the defendant such that there was an unlikelihood of misidentification, as well as other evidence identifying the defendant, the verdict actually rendered was surely unattributable to the error, and therefore was harmless error.
In this instance, although there may have been some prejudice to the defendant by the evidence of the details of the prior conviction, we hasten to add in this instance that the defendant admitted to the shooting of the victim. There was no issue of identification of the defendant as the killer. The issue in this instance was the defendant's description of the actions of the victim that allegedly led to the shooting and his claim that he acted in self-defense. The state presented testimony of several eyewitnesses to the shooting. These witnesses all said that the victim did not have a visible weapon and did not move his hands as if reaching for a weapon as the defendant claimed. By contrast, except for the defendant himself, the defense put on no eyewitnesses to the shooting whose testimony supported the "reaching for a weapon" account by the defendant. The details of the defendant's actions in the prior aggravated battery do not bear upon or relate to the victim's actions in this case where the crux of the issue is self-defense.
We conclude that the state's evidence is surely enough to refute the defendant's claim of self-defense, and therefore, the guilty verdict was unattributable to the error. We are convinced beyond a reasonable doubt that the admission of the details of the prior conviction was harmless error.
Assignment of Error 3. The court erred in allowing evidence of other crimes allegedly committed by the defendant for which he was not convicted, specifically regarding a prior altercation between the defendant and the alleged victim in the instant case.
When the defendant took the stand, he told the jury his version of the events leading up to the killing. He testified that he saw the victim reaching into his clothing and believed that the victim was reaching for a weapon. Defense counsel then asked:
Q: [I]n the few days immediately prior to April sixth of this year, had Mr. Abney threatened you?
A (Defendant): Yes.
Q: What had he threatened?
A: That he was going to kill me.
...
Q: What was on your mind as he was reaching toward his pants?
A: That he was going to kill me.
On cross-examination, the state questioned the defendant about the details of this threat. The defendant again testified that the victim had threatened to kill him. Over the defendant's objection, the following colloquy then occurred:
Q (Prosecutor): Now, do you have any idea why he would have threatened you like that?
A: Because of a prior incident.
Q: Okay. Isn't it true that you shot Mr. Abney on [sic] a leg with a .22 caliber pistol on March 30, 1995? Is that true? You shot at Mr. Abney, is that right?
A: You couldn't say I did it.
Q: I'm asking you did you shoot a gun at Mr. Abney on March the thirtieth of 1995?
Yes.
Q: Was Mr. Abney hit with that bullet?
A: I don't know.
Q: But you did shoot at him?
A: Yes.
Q: Do you think that may haveif he made the threat to kill you a few days later, you think that may have been the provocation that he would have used to make that threat?
A: Yes.
On redirect, the defendant urged that this March 30th shooting was also in self-defense.
The defendant objected on the basis of LSA-C.E. art. 404(B) to the introduction of evidence relating to the incident on March 30 because the state had not given the proper notice under LSA-C.Cr.P. art. 720 and State v. Prieur, supra. The trial court overruled this objection, stating that the defendant had raised the issue on cross-examination and the state should be entitled to fully explore the *1290 issue. The defendant urges on appeal that the trial court erred by admitting the evidence.
The defendant's position that Article 404(B) was violated is without merit. The March 30 incident was not discussed by the state in the above quoted cross-examination for the purposes listed in 404(B) regarding motive, plan, etc. relevant to the state's case nor was it discussed to show bad character of the defendant. The exchanges and conduct between the defendant and the victim in the days leading up to the killing were incidents first raised as a part of the defense to show the violent character of the victim under LSA-C.E. art. 404(A)(2). Once the defendant raised the issue of the verbal threats by Abney toward the defendant, the defendant's conduct in wounding Abney in that prior exchange on March 30 was relevant for an understanding of the complete incident between the parties. The defendant's evidence of the victim's threatening character stemmed from and was interrelated with the prior shooting, demonstrating the defendant's wrongful act and character. The state was properly allowed to probe the facts of that incident for rebuttal of the defense. State v. Silguero, 608 So.2d 627 (La.1992). This assignment of error has no merit.
Assignment of Error 4. The court erred in not allowing defense counsel to question a police officer as to the circumstances surrounding the defendant's giving a confession.
This assignment of error has been neither briefed nor argued and is, therefore, considered abandoned. U.R.C.A. Rule 2-12.4.
Assignment of Error 5. The court erred in giving a jury charge on "flight" based on the facts brought out at the defendant's trial.
The defendant testified that, after he shot the victim, he left the scene. The following is the relevant colloquy:
Q (Prosecutor): What did you do when you fired the shot?
A (Defendant): I left.
Q: How soon did you leave?
A: Not long.
Q: Did you try to render aid to Mr. Abney?
A: No. I didn't know whatit happened so fast I didn't know what to do.
Q: Did you leave the area as quickly as you could?
A: You could say that, yes, sir.
Q: How did you leave the area?
A: In Latrese Gandy's car.
...
Q: What did you do with this pistol?
A: I went over behind the baseball complex, and I threw it over there.
Deputy Kenneth Wesley arrested the defendant the next day. The deputy spotted the defendant walking down the street; the defendant came up to the deputy's car and told the deputy that he was Billy Powell. The deputy testified that the defendant made no effort to run away.
The defendant objected to the court's inclusion of a "flight" charge in the charge to the jury. That charge, which was given over the defendant's objection, reads:
If you findif you find that there is evidence that the defendant immediatefled immediately after a crime was committed or after he was accused of a crime, the flight alone is not evidence, or is not sufficient to prove that the defendant is guilty. However, flight may be considered along with all other evidence. You must decide whether there was such a flight and whether that flight was due to conscious consciousness of guilt or to other reasons unrelated to guilt.
See, e.g., State v. Smith, 26,661 (La.App.2d Cir. 3/1/95), 651 So.2d 890, writ denied, 95-0918 (La.09/15/95), 660 So.2d 458. On appeal, defendant contends that the trial court erred in giving this charge. He argues that "while the defendant in this case left the scene, absolutely no evidence was presented indicating he attempted to flee the scene, let alone from Deputy Wesley when confronted the following day, to prevent his arrest."
This argument is without merit. The defendant testified that he quickly left the scene after the shooting. Latrese Gandy testified that the defendant stayed at the scene "about ten seconds" after the shooting. Perhaps most importantly, the defendant testified that he disposed of the murder weapon *1291 immediately after he left the sceneanother factor relevant to his consciousness of guilt. See State v. Pravata, 522 So.2d 606, 613 (La.App. 1st Cir.1988), writ denied, 531 So.2d 261 (La.1988). The jury was properly instructed of the legal implications of the defendant's actions. Evidence that the defendant did not flee from the deputy is also relevant to his consciousness of guilt but the interpretation of that action, as with his flight from the crime scene, concerns the weight and credibility of the evidencea matter for the finder of fact. State v. Smith, 407 So.2d 652, 656 (La.1981).
This assignment of error is without merit.
Assignment of Error 6. The court erred by allowing the State, in closing argument to the jury, to urge the jury to set standards of conduct for Lincoln Parish.
During closing argument, on rebuttal, the following exchange occurred:
Prosecutor to jury: How many of uswho hasn't among us been in a tussle? Haven't you ever been somebody close up and shaking and fussing and arguing and spitting and just bad [sic] as the dickens with them? Would they have been justified in killing you? Of course not. It's murder, plain and simple.
You know what's great about our system is that you get to set the standards.
Defense counsel: I'm going to object. That's not proper to go into in a closing argument. They're not here to set standards; they're to decide guilt or innocence. Not proper to appeal to passion or sympathy.
Court: Well, don't appeal to passion or sympathy. You may proceed, Mr. Levy.
Prosecutor: You get to set the standards of what is reasonable or what an average person is entitled to do....
And later in his argument, the prosecutor said: "[T]hink of the standard that you want to set for this parish." The defendant's objection to this comment was overruled.
On appeal, the defendant argues that the trial court committed reversible error by allowing the prosecutor to ask the jury to set the standards for the parish. Defendant alleges that the state's argument went beyond the proper scope of closing argument as delineated in LSA-C.Cr.P. art. 774, which provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
In State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, 1285-1286, the supreme court said:
This court has stated as a general matter that a prosecutor retains considerable latitude in making closing arguments. State v. Byrne, 483 So.2d 564 (La.1986), cert. denied, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); State v. Morris, 404 So.2d 1186 (La.1981). Even when it has found that a prosecutor has exceeded that latitude, the court has often criticized the improper arguments without finding that they constitute reversible error. See, e.g., Byrne, supra; State v. Jarman, 445 So.2d 1184 (La.1984); State v. Messer, 408 So.2d 1354 (La.1982). Specifically, this court will not overturn a guilty verdict on the basis of improper argument unless "firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict." Byrne, 483 So.2d at 572; Messer, 408 So.2d at 1357.
Defendant contends that the remarks were so improper as to require reversal. The state admits that the comments "may have exceeded the limits of LSA-C.Cr.P. art. 774" but argues that they were not so improper as to require reversal. We agree. See State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, where the prosecutor's request that the jury "take a stand against crime" was held non-reversible error. The prosecutor's remarks did not rise to a level that convinces us that the jury's verdict was improperly influenced in this instance.
This assignment of error is without merit.
*1292 For these reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.
HIGHTOWER, J., concurs with written reasons.
HIGHTOWER, Judge, concurring.
Although agreeing that this record well supports the affirmance, I am uncomfortable with the majority's overly narrow view of Article 609.1(C). The discretion of the trial judge, when determining admissibility under 609.1(C)(3), should not be disturbed on appeal in the absence of abuse.

APPLICATION FOR REHEARING
Before HIGHTOWER, STEWART, GASKINS, CARAWAY and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] LSA-C.E. art. 609.1 provides, in pertinent part:

A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstance surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
[2] LSA-C.E. art. 404 B(1) provides:

(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
[3] We note that the defendant never moved for a mistrial under LSA-C.Cr.P. art. 770. At least one appellate court has held that this failure waives an "other crimes" error. See State v. Sterling, 95-673 (La.App. 5th. Cir.02/27/96), 670 So.2d 1316. The supreme court has previously indicated, however, that review of the issue is preserved by objection only. State v. Duke, 362 So.2d 559 (La.1978). This requirement is satisfied in this case. In State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 99, the supreme court overruled Duke and other cases which say that impermissible reference to other crimes evidence can never be harmless error. It is unclear whether Johnson overruled Duke on the objection issue and will mean that the defendant must move for a mistrial to preserve the issue for review. Absent an express directive from the higher court, we shall presume that the defendant has adequately preserved the issue.