1, JAMES F. McKAY III, Judge.
On December 5, 2002, the State filed a bill of information charging Derek Vance with second-degree cruelty to a juvenile in violation of La. R.S. 14:93.2.3. At his arraignment on January 14, 2003, he pleaded not guilty. Mr. Vance’s motion to suppress the statement was denied after a hearing on March 26th. A twelve-person jury found him guilty as charged after trial on June 24th. The State filed a multiple bill, and after a hearing on August 19th the defendant was found to be a second felony offender. He was sentenced to serve twenty years at hard labor without benefit of probation or suspension of sentence.
STATEMENT OF FACT
At trial Doctor Michael Isabelle, an expert in emergency medicine, testified that on September 22, 2002, he treated Kyran Holdfield, a twelve month-old boy, for second degree burns to his head and face, one to his left elbow, both feet, ankles and some to what we call the perianal area or his backside. Dr. Isabelle explained that third degree burns involve an entire layer of skin, are the worst type, and require a skin graft. A second-degree burn, involving less than the entire layer of skin, will repair itself, but it causes a great deal of pain and scarring. To cause this type burn, water temperature would have to be above the boiling point. | ¡.Photographs of the child’s burns were shown to the jury. The doctor opined that the injuries could not have been sustained while an adult was taking a bath with the child. The pattern of the injuries suggests that the child was dipped in hot water. The burns in the perianal area would occur when the child drew his feet up away from the water and inadvertently splashed the water on his buttocks. Under cross-examination, the doctor stated that his explanation as to how the injury occurred was speculation because he was not present when the child was burned.
Ms. Marshawna Holdfield, the child’s mother, testified that she has four children ranging in age from eleven to one.[1] The defendant, Kyran’s father and her former boyfriend, lived with Ms. Holdfield and her children. On September 22, 2002, when she left for work at 9:45 p.m., the older children were watching television, and Kyran was asleep in her bed. The defendant was putting out the trash. Kyran had no injuries the last time she saw him. About midnight the defendant called her at work to tell her that Kyran’s feet were peeling because he had stayed in the bathtub too long. Ms. Holdfield telephoned her supervisor for permission to leave but could not reach him immediately. The defendant called her again, panicking, saying the child’s face was peeling. When she arrived home, she found the child’s face swollen and his eyes shut; he did not cry or move until he heard her voice. One side of his face was burned as well as his hands, arms, and feet. As she tried to pick up the child, the defendant pushed her away from him, saying the child was okay, and that he had simply stayed in the tub too long. Only when the telephone rang and distracted the defendant was Ms. Holdfield able to pick up the child. She took him to the hospital immediately. She said that in the |3normal course of events the defendant never bathed the boy, and the boy never took his bath late at night. *865 She stated that the defendant’s age was twenty-nine.
Detective Vernon Haynes testified that on September 22, 2002, at 1:30 a.m. he arrested the defendant, who gave his date of birth as March 5, 1973. The detective read his rights to Mr. Vance prior to interviewing him. Although Mr. Vance was cooperative in answering the detective’s questions, he would not make a formal statement. When Detective Haynes went to the child’s home to check the water heater, he found that the temperature was turned up to highest setting for heat. The officer did not find out who set the water heater.
When the defendant testified, he told the court that he had prior convictions for burglary and injuring public records from 1995. Mr. Vance testified that on the night in question, Kyran woke up crying around midnight, and Mr. Vance fixed him some oatmeal in a bottle. He gave the following account of what happened next:
so when I came back to feed him, I had spilled the oatmeal over his clothing and lower part of his body; so I went to take him a bath; so I turned on the water and placed him in the water. And then I left to go clean up the oatmeal I had spilled on the bed. That’s why when I— when the police came, they found the towel right there because I dropped it. And when I heard Kyran hollering. And when I went in there, he was trying to get out the water. I didn’t know it was too hot. He hollered; so I took him out the water and put some more clothing [sic] in there and then I got in there. We stayed in there about a half an hour; so when I took him out, to put him on the bed to dry him of [sic], when I started wiping his face, his skin started coming off his face. And when I was wiping his feet and hands, his skin started coming off the hands; so I tried to put some cream, some cream we had on the dresser, some cream on him. And then after that, I called his momma. I ... told her she needs to come home because Kyran got burned. And that’s when she started hollering.
Mr. Vance also stated that Ms. Holdfield accused him of harming the boy, and he argued with her, saying he had done nothing wrong. Under cross-examination, Mr. 14Vance asserted that he frequently gave Kyran a bath. He also claimed he turned on both faucets when he put the child in the tub. He testified that he tested the water and it was not hot. Mr. Vance denied exposing Kyran to water that burned him.
ERRORS PATENT
A review of the record for errors patent reveals none.
DISCUSSION
The defendant through counsel makes two assignments of error: the evidence is insufficient to support the conviction, and trial counsel rendered ineffective assistance of counsel.
ASSIGNMENT OF ERROR NUMBER 1
In this assignment, the defendant contends the State failed to produce sufficient evidence to sustain his conviction for second-degree cruelty to a juvenile.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, *866 such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Also, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact’s determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
La. R.S. 14:93.2.3(A)(1) defines second-degree cruelty to a juvenile as
the intentional or criminally negligent mistreatment or neglect by anyone over the age of seventeen to any child under the age of seventeen which causes serious bodily injury or neurological impairment to that child.
The article defines serious bodily injury as
bodily injury involving protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or substantial risk of death.,
La. R.S. 14:93.2.3(A)(2).
The defendant, through counsel, argues that he was a loving father who made a terrible mistake while he was attempting to care for his son. He claims that his lack of experience permitted him to leave the child in the tub unattended while |flthe water was running. He denies any intentional mistreatment or criminal negligence of his son.
La. R.S. 14:10(2) defines general criminal intent as
present whenever there is specific intent and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
La. R.S. 14:12 indicates that criminal negligence exists
when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under the circumstances.
The defendant stated that he got into the bathtub with the child and they remained in the tub for thirty minutes before they both got out. It was only when he was drying the child that he noticed the child’s skin was peeling.
At trial the doctor who treated the child testified that the child’s injuries were caused by water heated to or above the boiling point and that the pattern of injury *867 indicated the child had been dipped into the water.
The jury hearing the evidence had a choice between the doctor’s and the defendant’s account of the incident. The testimony revealed that the defendant was twenty-nine years old at the time of the incident and the victim was one year of age, that the child suffered serious bodily injury and disfigurement, and that the defendant either intentionally mistreated or neglected him or alternatively, the defendant was criminally negligent in treatment or neglect of the child. The jury was within its discretion when it chose to accept the medical testimony and thereby conclude that evidence proved that the defendant was guilty of second-degree cruelty to a juvenile.
In State v. Green, 449 So.2d 141 (La.App. 4 Cir.1984), this Court considered a case in which the feet of a two year old child were dipped into a bucket of boiling water. In that case, as in the case at bar, the defense argued that there was a reasonable explanation of the incident, which could exonerate the defendant; however, this Court affirmed the trial court after finding the elements of the crime beyond a reasonable doubt. Similarly in the case at bar, the evidence is sufficient to support the conviction.
ASSIGNMENT OF ERROR NUMBER 2
The defendant next argues that his trial counsel was ineffective. He alleges that his credibility was improperly attacked and trial counsel failed to move for a mistrial. After the defendant testified that he had a 1995 conviction for burglary and injuring public records, the prosecutor asked if he had been convicted of dishonesty, and the defendant answered, Injuring public records, yeah. The prosecutor also referred to the defendant’s conviction for dishonesty in his closing argument.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
IsThe defendant’s claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
*868 This court has recognized that if an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
|3The defendant maintains counsel made a fatal error in not requesting a mistrial under La.C.Cr.P. article 775.[2] He contends that the prosecutor’s comments went beyond the credibility testing allowed by La. C.E. art. 609.1[3] and did so twice once during the defendant’s testimony and again during closing argument.
Pursuant to La. C.E. 609.1(C), in attacking the credibility by evidence of conviction of crime in criminal cases only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible.[4] In State v. Powell, 28,788 (La.App. 2 Cir. 11/1/96), 683 So.2d 1281, after a defendant testified as to his two prior offenses, the prosecutor began to question him about the type of weapon he had used in one of the prior convictions. When the defense objected, the trial court allowed the question because it was framed to show the similarity of the prior crime to the current offense. However, on appeal, the Second Circuit held that under La. C.E. art. 609.1(C), the details of the prior conviction were not admissible.
In State v. Johnson, 93,711 (La.App. 3 Cir. 2/2/94), 631 So.2d 658, writ granted, 94-1379 (La.11/27/95), 664 So.2d 94, after the defendant testified that he had one prior simple burglary conviction, the State introduced six bills of information for simple burglary and questioned the defendant at length about the documents. On appeal, the defendant argued that the trial *869 court erred in admitting the bills of information, and the Third Circuit, after finding that five of the counts of simple burglary had been nolle proseqiáed and that the defendant had pleaded guilty to one count of simple burglary, reversed the conviction and sentence. Thereafter the State filed a writ asking the Supreme Court whether harmless error analysis applies when other crimes evidence is improperly admitted.
The Supreme Court then considered the issue of quantitative assessment of erroneous introduction of evidence under La. C.E. art. 609.1. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. The court stated that the question is not whether, in a trial that occurred without error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. Id., 664 So.2d at 100, citing Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). The court then looked at all the testimony and evidence and determined that the verdict could not be attributable to the error; the error was then declared harmless.
While the prosecutor in the case at bar did not violate La. C.E. art. 609.1(C) in the manner occurring in Powell or Johnson, it appears he did Inoverstep the article in characterizing the offense of injuring public records as a crime of dishonesty and, thus, a reflection of the defendant’s bad character. Therefore, it appears that the defense attorney should have objected when the prosecutor was cross-examining the defendant.
Applying harmless error analysis, it appears that the defendant gave an illogical account of how the child’s injury occurred. The testimony of the examining physician and the child’s mother were coherent and logical. Pictures of the child’s second-degree burns were introduced into evidence. The jury deliberated only thirty-eight minutes before finding the defendant guilty. In view of the evidence of the defendant’s guilt, it does not appear that the prosecutor’s question contributed to the verdict, and thus, the error was harmless.
The prosecutor also complained of the defendant’s dishonesty in his closing argument. That remark is governed by La.C.Cr.P. art. 774, which provides that the scope of closing argument
shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant.
Prosecutors, however, have wide latitude in choosing closing argument tactics. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036, citing State v. Martin, 539 So.2d 1235, 1240 (La.1989). Further, the trial judge has broad discretion in controlling the scope of closing arguments. Id. Even if the prosecutor exceeds the bounds of proper argument, a reviewing court will not reverse a conviction unless “thoroughly convinced” that the argument influenced |12the jury and contributed to the verdict. State v. Ricard, 98-2278, p. 4 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397.
In State v. Jason, 99-2551 (La.App. 4 Cir. 12/6/00), 779 So.2d 865, the defense argued the State made an improper statement in closing argument when the prosecutor commented that the defense counsel’s job was to show the State’s witnesses were lying. This Court stated that in closing argument the jury’s function is to assess the credibility of the witnesses, and it *870 is proper for both sides to argue that their witnesses should be believed and the other side’s not believed. State v. Jason, p. 7, 779 So.2d at 870. This Court found nothing improper in questioning the honesty of witnesses during closing argument.
Similarly crediting the good sense of the jurors in the instant case, it does not seem that the prosecution’s references to defendant as having committed a crime of dishonesty influenced the jury and contributed to the verdict. Accordingly, the defendant did not receive ineffective assistance of counsel.
There is no merit in this assignment.
For the above and forgoing reasons we affirm the defendant’s conviction and sentence.
AFFIRMED.

. The victim's birth date is September 7, 2001.

. La.C.Cr.P. art. 775 provides in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(5) It is physically impossible to proceed with the trial in conformity with law....

. La. C.E. art. 609.1, Attacking credibility by evidence of conviction of crime in criminal cases provides in pertinent part:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
[[Image here]]
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.

. In State v. Singleton, 589 So.2d 1166 (La.App. 4 Cir.1991), this Court noted that prior to 1989 and the adoption of La. C.E. art. 609.1 a defendant who testified could be impeached by showing that his character was bad, and he could be questioned as to the details of a prior offense. The new article, however, restricts such evidence unless the defendant denies his prior convictions or testifies to exculpatory facts, or when the probative value outweighs the danger of unfair prejudice or confusion of the jury.