779 So.2d 865 (2000)
STATE of Louisiana
v.
Alonzo JASON.
No. 99-KA-2551.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 2000.
*868 Kerry P. Cuccia, New Orleans, Louisiana, (Attorney For Appellant, Alonzo Jason).
Laura Pavy, Louisiana Appellate Project, New Orleans, Louisiana, (Attorney For Defendant/Appellant, Alonzo Jason).
Harry F. Connick, District Attorney of Orleans Parish, Jane L. Beebe, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, (Attorneys For Appellee, The State of Louisiana).
Court composed of Judge STEVEN R. PLOTKIN, Judge PATRICIA RIVET MURRAY, and Judge Pro Tempore PATRICK M. SCHOTT.
MURRAY, Judge.
Alonzo Jason appeals his conviction for attempted purse snatching and possession of cocaine. For the following reasons, we affirm the convictions and sentences.

PROCEDURAL HISTORY:
Mr. Jason was charged by bill of information with violation of La.Rev.Stat. 14:65.1, purse snatching, and La.Rev.Stat. 40:967, possession of cocaine. A six-person jury convicted him as charged on the cocaine offense, and of the responsive verdict of attempted purse snatching. Prior to a hearing on the State's multiple bill, Mr. Jason filed a motion for new trial and a motion to quash the multiple bill. After denying his motions, Mr. Jason waived delays, and the trial court sentenced him to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence on the purse snatching conviction, and five years at hard labor on the cocaine charge, with the sentences to run concurrently. Mr. Jason filed a motion to reconsider the sentence, which was denied.

FACTS:
On April 11, 1999, at approximately 12:50 a.m., Roberta Szalach, a nurse, and her husband, Calvin, a nuclear medicine technician, in town for a nuclear medicine convention, were returning to the Marriott Hotel after having dinner and visiting the French Quarter. As they walked on Canal Street from Bourbon Street toward the river, the Szalachs observed a man lying on the sidewalk. Ms. Szalach testified that she believed the man to be injured, and wanted to stop to help him. Her husband suggested they go to their hotel and call for help, but Ms. Szalach leaned over to observe the man more closely. As she did, a man struck her on the side of her head, knocking her to the ground. He then pulled her purse from her shoulder, breaking the strap. Ms. Szalach got up and approached the man, who was attempting to open her purse. She yelled at him to return her purse, at which time he struck her in the head and knocked her to the ground again, falling on top of her. Ms. Szalach testified that some men pulled the man off of her just as the police arrived.
Mr. Szalach testified that he had begun to walk away from the injured man, and was about five feet from his wife, when he heard her scream. As he turned back, he saw his wife approach Mr. Jason and attempt to get her purse from him. Mr. Jason struck her in the head. He was moving toward Mr. Jason just as several men came out of the nearby McDonald's restaurant and the police arrived.
Edmond Smith, the owner of the McDonald's restaurant testified that he was standing outside of his restaurant with a security guard employed by him, when he noticed a fight going on down Canal Street. He then saw Mr. Jason begin to walk toward him and snatch Ms. Szalach's purse. Mr. Smith described Mr. Jason as being "hyper." After Mr. Jason had fallen on top of Ms. Szalach, Mr. Smith helped to pull him off and flag down a passing police car. He stated that the police at first believed the incident was a fist fight, but *869 after he explained what had happened, they arrested Mr. Jason. They handcuffed Mr. Jason, frisked him, and discovered cocaine in his pocket.
New Orleans Police Officer Patrick Evans testified that he and his partner, Troy Williams, were on routine patrol on Canal Street when they noticed a disturbance on the sidewalk. They exited their vehicle, and, after listening to Mr. Smith's account of what had transpired, they arrested Mr. Jason. Upon searching him incidental to the arrest, Officer Evans discovered three pieces of crack cocaine in a coin purse in Mr. Jason's pocket.
On cross-examination, Mr. Jason's counsel questioned Officer Evans about an additional charge of second degree battery brought against Mr. Jason that evening. Officer Evans admitted that he and his partner were also advised of the incident down the street, and that he was told Mr. Jason had beaten a man down the street who attempted to hand him his hat he had dropped. The man was knocked to the ground and fractured his skull.
It was stipulated that the objects seized from Mr. Jason's pocket tested positive for cocaine.

DISCUSSION:

A. Counsels' Assignment of Error No. 1:
Both appellate project counsel and private counsel[1] assign as error the excessiveness of Mr. Jason's sentence of life imprisonment as a third felony offender. Appellate project counsel concedes that the sentence is mandatory pursuant to La. Rev.Stat. 15:529.1(A)(2)(b)(ii), but argues that the sentence is unconstitutionally excessive in this case. Private counsel argues that State v. Dorthey, 623 So.2d 1276 (La.1993) mandates that the trial court examine the particular facts of the case to determine if a statutorily-mandated sentence is constitutionally excessive.
Louisiana Revised Statute 15:529.1(A)(2)(b)(ii) provides:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The two predicate crimes on which the multiple bill was based were simple robbery and possession of cocaine. Mr. Jason was multiple billed on the attempted purse snatching conviction. Both simple robbery and attempted purse snatching are crimes of violence.
Mr. Jason maintains that under State v. Dorthey, 623 So.2d 1276 (La.1993), the mandatory life sentence should be deemed excessive considering the circumstances of this offense. Particularly, he argues that in connection with the predicate offense of simple robbery he received only fifteen months, but for an attempted purse snatching he received a life sentence.
He asserts that his case is analogous to State v. Barthlomew, 377 So.2d 1233 (La. 1979), wherein a life sentence was set aside because the trial judge did not consider all of the sentencing "alternatives." We not find Barthlomew applicable to this case. First, Barthlomew did not involve a multiple offender adjudication. Second, Mr. Bartholomew's sentence was set aside because the trial judge imposed a prohibition against probation or suspension of sentence, penalties not contained in the statute at the time the crime was committed. Therefore, the sentence exceeded the statutory limits and disregarded available sentencing alternatives.
*870 The Louisiana Supreme Court has held that the penalties provided by La.Rev.Stat. 15:529.1 are not unconstitutional on their face and do not provide grounds for quashing a multiple bill. State v. Pollard, 93-0660 (La.10/20/94), 644 So.2d 370. A trial court does have the authority to reduce the mandatory minimum sentence provided by the statute for a particular offense and offender when such a term would violate the defendant's constitutional protection against excessive punishment. Id. However, as our Supreme Court explained in State v. Walter Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, "it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders." Rather, the sentencing court can only "determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution." Walter Johnson, 97-1906 at p. 8, 709 So.2d at 677. A defendant must prove by clear and convincing evidence that he "is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." Walter Johnson, supra, citing J. Plotkin's concurrence in State v. Young, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 531, writ denied 95-3010 (La.3/22/96), 669 So.2d 1223.
In this case, we find no error in the trial court imposing the mandatory life sentence and in not particularizing the sentence to Mr. Jason. The trial court had little discretion in sentencing given the fact that Mr. Jason had three offenses, two of which were crimes of violence. Furthermore, there was no evidence offered to distinguish Mr. Jason as exceptional, thereby rebutting the presumption that the mandatory minimum sentence was constitutional. State v. Walter Johnson, supra; State v. Finch, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, writs denied 99-1240 (La.10/8/99), 750 So.2d 179 and 99-1300 (La.10/8/99), 750 So.2d 963; State v. Francis, 96-2389 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, writ denied 98-2360 (La.2/5/99), 737 So.2d 741.
Additionally, Mr. Jason's comparison between the sentence for simple robbery and the one for attempted purse snatching is not germane to the issue. Mr. Jason is being sentenced as a multiple offender; therefore, the sentence in this case is to punish him for being a repeat offender. He is not receiving a life sentence for an attempted purse snatching conviction.

B. Pro Se Assignment of Error No. 1:
Mr. Jason argues that the State made an improper statement during rebuttal to Mr. Jason's closing argument. Specifically, he complains that the district attorney said that it was defense counsel's job to show that the State's witnesses were lying, a statement objected to by defense counsel, but overruled.
Louisiana Code of Criminal Procedure art. 774 states that the State's rebuttal shall be confined to answering the argument of the defense. The prosecutor's statement that it was defense counsel's job to attack the credibility of the State's witnesses was made to rebut the defense's argument that the jury should not believe the State's witnesses. The jury's function is to assess the credibility of the witnesses, and it is proper for both sides to argue that their witnesses should be believed and the other side's not believed. We find nothing improper in the prosecutor's argument.

C. Pro Se Assignment of Error No. 2:
Mr. Jason argues that his counsel was ineffective at trial.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can *871 be conducted. State v. Scales, 93-2003, p. 16 (La.5/22/95), 655 So.2d 1326, 1337, cert. denied, Scales v. Louisiana, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Johnson, 622 So.2d 845 (La.App. 4 Cir.1993). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Peart, 621 So.2d 780 (La. 1993); State v. Johnson, supra.
Mr. Jason's claim of ineffective assistance of counsel is to be assessed by the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). Mr. Jason must show that his counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced Mr. Jason if he can show that the errors were so serious as to deprive him of a fair trial. To carry his burden, Mr. Jason "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. Mr. Jason must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This Court has recognized that if an alleged error falls "within the ambit of trial strategy," it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987)..
Here, Mr. Jason argues that his counsel was ineffective for failing to move for a mistrial when the prosecutor referred to other crimes during rebuttal argument.[2] Specifically, the prosecutor said: "Defense counsel talked about why didn't we bring the deputy, well, the deputy was not related in this particular case. He was related to the case involving a battery. It had nothing to do with this case, so why would I bring in somebody who was totally unrelated to this case to come testify. He can't tell you what the defendant did as far as the purse snatching. He knows nothings about this case." Mr. Jason's counsel objected.[3] The trial court overruled the objection.
Mr. Jason's defense was that he was running away from a fist fight when he "ran into" the victim. He called Officer Troy Williams in an apparent effort to present this defense. The prosecutor's comment was proper to rebut the evidence presented. La.Code Crim. Proc. art. 774.

D. Pro Se Assignment of Error No. 3:
Mr. Jason assigns as error the trial court's denial of his motion to reconsider *872 sentence. He argued in this motion that his sentence was excessive. This issue was discussed above.

E. Pro Se Supplemental Assignment of Error and Private

Counsel Assignment of Error No. 2:
Mr. Jason argues both pro se and through private counsel that his trial counsel was ineffective for failing to file a motion to quash the multiple bill or object to the introduction of documentary evidence offered by the State at the multiple bill hearing.[4] Specifically, Mr. Jason argues that the State did not present sufficient evidence that the guilty plea in No. 333-894 "F" was knowing and voluntary. This argument of ineffective assistance may be reviewed on this record.
In State v. Shelton, 621 So.2d 769 (La. 1993), the Louisiana Supreme Court reviewed the jurisprudence concerning the burden of proof in habitual offender proceedings, and found it proper to assign the burden of proof to a defendant who contests the validity of his guilty plea. In State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 80, writ denied 98-0264 (La.6/19/98), 719 So.2d 481, the Fifth Circuit Court of Appeal summarized the procedure for determining the burden of proof in a multiple offender hearing:
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that the defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a "perfect" transcript of the Boykin colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) and "imperfect" transcript. If anything less than an "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary.
Prior to State v. Shelton, supra, the requirement of proof of Boykinization was a transcript of the plea of guilty or a minute entry showing an articulated waiver of the three rights. In State v. Bland, 419 So.2d 1227, 1232 (La.1982), the minute entry alone was sufficient to show that the defendant was informed of his rights where the minute entry itemized those rights.
When a defendant argues that the Boykinization documentation is inadequate, the trial court must weigh the evidence and determine if the State met its burden of proving that the defendant's prior plea was informed and voluntary. Here, the trial court examined the evidence admitted by the State for one of Mr. Jason's predicate felonies including a preprinted minute entry stating that Mr. Jason was advised of his Boykin rights; the docket master establishing that on that date, May 18, 1989, Mr. Jason was represented by counsel; and the guilty plea form was signed by defense counsel. We find no error in the trial court's determination that Mr. Jason's 1989 plea was informed and voluntary.
Through private counsel, Mr. Jason argues that his 1995 conviction for *873 simple robbery should not have been used to enhance his sentence because of several defects. In support of that conviction, the State introduced the bill of information, the guilty plea, the docket master, the minute entries of the plea and the sentencing, and the arrest register. Mr. Jason argues that the copy of the guilty plea in the record does not contain the judge's signature. The docket master and the minute entry, however, establish that the plea was taken in open court when the judge would necessarily have been present. The form states, "The judge has addressed me personally...." The State sufficiently proved that the plea was valid. See State v. Shelton, supra; State v. Winfrey, supra.
Mr. Jason also argues that the bill of information was incorrect because it accused him of being guilty as charged in the instant case when he was, in fact, found guilty of the lesser included offense of attempted purse snatching. It is obvious from the record that the trial judge knew Mr. Jason had been found guilty of the lesser included offense in the trial over which he has just presided, and the conviction for which he was about to render sentence. Furthermore, for billing purposes, there is no difference between purse snatching and attempted purse snatching, both being felonies and crimes of violence. La.Rev.Stat. 14:13.
Mr. Jason also complains of a typographical error in the multiple bill which listed the date of the cocaine conviction as May 19, 1985, rather than May 19, 1989. We find that the State adequately proved that Mr. Jason pled guilty to possession of cocaine on May 18, 1989. There is no indication that Mr. Jason was somehow prejudiced by the typographical error as might have been the case if he had not known which prior plea was being used in the multiple bill. The multiple bill was clearly marked with the correct case number and section of court.

F. Private Counsel Assignment of Error No. 3:
In the last assignment of error raised by private counsel, Mr. Jason argues that his request to change his plea from guilty to not guilty and not guilty by reason of insanity should have been granted.
Mr. Jason originally pled not guilty on August 25, 1997. Trial was continued numerous times until it was finally set for July 16, 1998. On the morning of trial, defense counsel filed a motion for a lunacy commission that the court granted. Counsel also filed a motion for continuance and a motion to change the plea to not guilty and not guilty by reason of insanity. A lunacy hearing was held immediately. Two subpoena duces tecum were submitted by the defense: one to the University Medical Center of Louisiana, where Mr. Jason evidently had been hospitalized for two days of psychiatric treatment the week before trial, and the other to Chartres Mental Health Clinic for a report of March 22, 1996, a time when Mr. Jason alleged he was experiencing auditory and visual hallucinations.
Dr. Salcedo, a forensic psychologist, testified that he examined Mr. Jason on the morning of trial and read the 1996 report. Dr. Salcedo specifically stated, "I did not see any information available to me or in his clinical presentation today, and based on my diagnosis of him today, that there would be any disease or defect, any mental disease or defect which would have compromised his ability to distinguish right from wrong at the time of the alleged offense." He also found Mr. Jason competent to stand trial. Dr. Salcedo described Mr. Jason as a malingerer.
Dr. Richoux, a forensic psychiatrist, also examined the 1996 report and was present at the interview with Mr. Jason on the morning of trial. He stated "it was more likely than not that the defendant was sane at the time of the offense."
*874 The court then denied the motion to change the plea.
Louisiana Code of Criminal Procedure art. 561 provides that a defendant is allowed 10 days after arraignment to change his plea from not guilty to not guilty and not guilty by reason of insanity. After the 10 day period, the court may allow a change of plea, for good cause shown, at any time prior to commencement of trial. The revision comments indicate that the rule was adopted to preclude a motion to change plea being filed as a dilatory tactic.
A plea of not guilty by reason of insanity urges that the defendant was incapable of distinguishing between right and wrong at the time the criminal offense was committed. La.Rev.Stat. 14:14; La.Code Crim. Proc. art. 650. A defendant's state of mind after arrest is not germane to a plea to an indictment or bill of information, but, rather, relates solely to his capacity to assist his counsel and to proceed, with understanding, through the judicial process. See La.Code Crim. Proc. art. 641, et seq.
A defendant's burden of showing good cause to grant a motion to change plea logically increases each day that his trial date nears. State v. Mercer, 564 So.2d 783, 785 (La.App. 2 Cir.1990). In Mercer, the defendant pleaded not guilty on September 14, 1988. After a preliminary hearing was held, 40 days prior to the trial date, defendant orally moved to change his plea. After hearing, the trial court denied the motion, stating that "after considering the medical records and the lay testimony ... [and] defendant's demeanor..., that defendant failed to establish good cause [for a] ... change of plea...." Although the defendant appeared to the trial court to be "slow," the trial court did not find him to be suffering from any incapacities "so as to render him incapable of distinguishing right from wrong." The Second Circuit reversed, finding an abuse of discretion. Medical reports in the record indicated "borderline" mental retardation that limited the defendant's ability to "determine right from wrong," and an affidavit submitted by the defendant's mother stated that he was "presently undergoing psychiatric treatment." The Court found that the defendant showed good cause to warrant a change of plea.
In this case, Mr. Jason waited 11 months, until the morning of trial, to file the motion to change his plea. He presented no evidence that he did not understand the difference between right and wrong at the time he committed the offense. Both experts testified that Mr. Jason was sane at the time of the offense. Accordingly, the trial court did not err in refusing to allow Mr. Jason to change his plea.

G. Errors Patent:
Mr. Jason claims that he was not informed at the time of sentencing of the prescriptive period for filing an application for post-conviction relief. The failure to inform a defendant of this time limitation does not bestow an enforceable right. State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, 526, writ denied 96-0388 (La.9/13/96), 679 So.2d 102. Thus, we find no error patent.
Accordingly, for the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
PLOTKIN, J., Dissents with Reasons.
The majority ignores the holding of the Louisiana Supreme Court in State v. Lindsey, 770 So.2d 339 (La.2000), which mandated that the guidelines set forth in State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, govern the review of mandatory minimum sentencing under an excessive sentence claim. The majority only makes reference to the Johnson decision. There is no analysis of the guidelines.
In Lindsey, the Court stated:
"A court may only depart from the minimum sentence if it finds that there is *875 clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations ."
Id. at p. 343 (quoting Johnson, 709 So.2d at 676-77).
The Court further stated that in departing from the mandatory minimum sentence, the court should examine whether the defendant has clearly and convincingly shown there are exceptional circumstances to warrant the departure:
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., (quoting Johnson, 709 So.2d at 676 (citing State v. Young, 94-1636 at pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurring))). The court should also consider the defendant's record of non-violent offenses; but this alone is not sufficient to declare the sentence excessive because the Habitual Offender Law already takes violence into account. The court should be mindful of the goals of the statute, and not question the wisdom of the legislature. Finally, in making a downward departure from the mandatory minimum sentence, the court should impose the longest sentence that is not excessive under the Louisiana Constitution. Id. at pp. 526-527.
In the instant case, defendant's two prior convictions are for two relatively minor felonies: simple robbery and possession of cocaine. Defendant's present conviction is for attempted purse snatching. It was the combination of these three felony convictions that triggered the mandatory life sentence under the Habitual Offender Law. On appeal, defendant argues that the life sentence imposed is excessive as applied to him.
Under the Johnson analysis, the court must examine any exceptional circumstances presented by the defendant in considering sentencing under the Habitual Offender Law. In this case, defendant argues that his sentence is not in proportion with the severity of the crime. Defendant asserts that attempted purse snatching, although considered a crime of violence, carries a lesser threat of violence than other crimes, and should be punished in proportion to the degree of harm. Defendant further argues that there was no dangerous weapon used in the perpetration of the instant offense.
The record reveals that the defendant has no convictions involving a dangerous weapon. The defendant punched the victim while perpetrating the current offense; however, the defendant did not cause serious or permanent injury to the victim. Considering the foregoing, defendant has demonstrated that he is exceptional under these circumstances. Under the holding of Lindsey, defendant's circumstances warrant a downward departure from the mandatory minimum sentence of life imprisonment.
For the above stated reasons, I conclude that defendant's life sentence is excessive under the constitutional standard. I would vacate the sentence and remand for resentencing. Accordingly, I respectfully dissent.
NOTES
[1] One day prior to oral argument, Mr. Jason hired private counsel to represent him on this appeal. Thus, we are addressing those assignments raised by both appellate project counsel and private counsel.
[2] La.Code Crim. Proc. Art. 770(2) provides: Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
[3] The basis of the objection was not necessarily that the prosecutor made an improper reference to other crimes. Defense counsel objected, stating as grounds for the objection: "It has to be with actual contest and nature of that officer's participation in this case as detailed in this transcript."
[4] The record indicates that defense counsel did file a motion to quash the bill of information, and did object at the multiple bill hearing to the sufficiency of the evidence offered by the State to support the multiple bill. However, the motion to quash was not based on the same grounds raised in Mr. Jason's supplemental pro se brief, and defense counsel's objections at the multiple bill hearing were overruled.