LMICHAEL E. KIRBY, Judge.

STATEMENT OF THE CASE

On November 15, 2001, Randy Finch was charged by bill of indictment with second degree murder, a violation of La. R.S. 14:30.1. At his arraignment on November 28th, he entered a plea of ntít guilty. However, after a bench trial on June 24 and 26, 2002, Finch was found to be guilty as charged. He was sentenced on July 16, 2002, to life imprisonment without benefit of parole, probation, or suspension of sentence. He was granted an out-of-time appeal on November 19, 2002.

FACTS

Ms. Etta Briscoe, the mother of the twenty-three year old victim, testified that the defendant had a seven-year relationship with her daughter, Tamika Moses, who was the mother of Finch’s three children. Finch lived with Tamika at Ms. Bris-coe’s house for some time. About 11:00 a.m. on September 16, 2001, Ms. Briscoe left her home to go to a cousin’s house to get her hair done. Tamika was at home. Sometime later she received a telephone call from Derika Jackson, a friend of Tamika, who told her that Finch was at the house and Tamika was crying. Ms. Bris-coe went home immediately. Tamika’s father had just arrived at the house and Lwas standing in the doorway. Ms. Briscoe rushed past him to Tamika’s bedroom. There she saw her daughter bleeding from a head wound. Ms. Briscoe and Tamika’s father took her to the hospital immediately. She was there about twenty minutes *682 before she died. Under cross-examination, Ms. Briscoe stated that she was never aware of jealousy problems between Finch and Tamika. She denied knowing of her daughter’s relationship with any other men.
Dr. James Traylor, a forensic pathologist who performed the autopsy on Tamika, testified that Ms. Moses died from internal bleeding and injuries caused by repeated blows to her abdominal area. Ms. Moses’ liver was lacerated or torn from front to back, the vein supplying blood to her intestines was completely severed, and her right kidney had two lacerations or tears. Ms. Moses also suffered a spiral fracture in her upper right arm, abrasions to her left shoulder and on the left side of her neck, and a bruise on her right breast.
Winnie Peter, the victim’s co-worker, testified that the defendant called her several times after he left Ms. Moses’ apartment to inquire about the victim’s condition. Ms. Peters further testified that he admitted he repeatedly kicked Ms. Moses until she was unconscious.
Detective Danny Wharton, of the New Orleans Police Department, testified that while he was at the scene of the beating, the telephone rang and he answered it. A person identifying himself as “Randy” asked for Tamika. Upon being told that Tamika was not there Randy asked why the police were there. Detective Wharton then inquired if he had had an altercation with Tamika. Randy responded “yes,” that he did have an altercation. When told that he needed to come to the police station to discuss the situation, Randy declined saying he would call back. A short time later Randy called back wanting to know what was wrong with |sTamika. Detective Wharton informed him that he needed to go to the station and that Tamika “may not make it.” Randy replied that he did not know if he would come because he did not want to go to jail. Ultimately, though, he turned himself in after a warrant had been issued for his arrest.

ERRORS PATENT

A review of the record revealed that there are no errors patent.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

Defendant’s appellate counsel complains the evidence was insufficient to sustain the defendant’s conviction for second-degree murder.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror |4could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984).
La. R.S. 14:30.1(A)(1) defines second-degree murder in part as the killing of a human being when the offender has a specific intent to kill or inflict great *683 bodily harm. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or his failure to act. La. R.S. 14:10. Specific intent is a state of mind, and as such need not be proven as a fact but may be inferred from the circumstances of the situation and the actions of the defendant. State v. Brooks, 505 So.2d 714 (La.1987). Specific intent to kill or inflict great bodily harm can be inferred from a shooting which occurs at a fairly close range. State v. Cummings, 99-3000 (La.App. 1 Cir. 11/3/00), 771 So.2d 874
Appellate counsel argues the evidence supported a manslaughter conviction. La. R.S. 14:31 defines manslaughter as a homicide committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. State v. Collor, 99-0175, p. 10 (La.App. 4 Cir. 4/26/00), 762 So.2d 96, 102.
However, the evidence showed the defendant’s blood had time to cool. On September 15, 2001, the defendant moved out of the residence that he shared with the victim. On September 16, 2001, approximately twenty-four hours later the defendant returned to the victim’s residence where he beat her severely causing internal injuries and bleeding that led to her death. The defendant’s intent to kill or inflict great bodily harm can be inferred from the defendant’s actions. Additionally, the defendant admitted he repeatedly kicked the victim until she was 1¡¡unconscious. The evidence was clearly sufficient to support the verdict. Therefore, this assignment of error is without merit.

FINCH’S PRO SE ASSIGNMENT OF ERROR

The defendant complains his trial counsel was ineffective for waving his right to jury trial, for refusing to allow the defendant to testify, for refusing to call other witnesses, and for withdrawing the defendant’s motion for new trial and judgment of acquittal.
The Louisiana Supreme Court in State v. Brooks, 505 So.2d 714, 724 (La.1987) citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) stated that hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.
This court in State v. Jason, 99-2551 (La.App. 4 Cir. 12/6/00), 779 So.2d 865, 871 citing Strickland v. Washington, supra, stated that the claim of ineffective assistance of counsel is to be assessed by the two-part test of Strickland. The defendant must show that his counsel’s performance was deficient and that the deficiency prejudiced him. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Jason, supra. Counsel’s deficient performance will have prejudiced the defendant if he can show that the errors were so serious as to deprive him of a fair trial. To carry this burden, the defendant “must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceedings would have been Indifferent. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Jason, Id, citing Strickland, Id.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief filed in the trial court *684 where a full evidentiary hearing can be conducted. Only if the record discloses sufficient evidence to rule on the merits of the claim do the interest of judicial economy justify consideration of the issues on appeal. State v. Myers, 97-2401 (La.App. 4 Cir. 12/6/00), 773 So.2d 884. The record before this court is not sufficient to review the defendant’s claim of effective assistance of counsel. Therefore, this court must decline to review this assignment, preserving the defendant’s right to raise the issue via an application for post conviction relief.

CONCLUSION

For the aforementioned reasons the defendant’s sentence and conviction are affirmed.
AFFIRMED.