PAUL A. BONIN, Judge.
 

 | ,The defendant, Kenyon Fields, appeals his conviction and sentence for second-degree murder, a violation of La. R.S. 14:30.1. The trial court imposed the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
 
 [1]
 
 For the reasons which follow, we affirm his conviction and sentence.
 

 TRIAL COURT PROCEEDINGS
 

 On March 22, 2007, the Orleans Parish grand jury indicted Fields for the capital
 
 *352
 
 crime of first degree murder of Darnell Roussell.
 
 See
 
 La. R.S. 14:30. On March 29,
 
 2007,
 
 Fields was arraigned with counsel present, and pled not guilty to the charge against him.
 
 [2]
 
 On May 3, 2007, the trial court heard and denied the motion to suppress identification. On October 18, 2007, the indictment was amended to a single count of second degree murder. On October 22, 2007, the defendant, with his counsel, pled not guilty to the amended charges.
 

 |2The jury trial began on February 11, 2008 and concluded on February 13, 2008, at which the defendant was represented by counsel. Both defendant and his counsel were present at jury selection and when judgment was rendered. A twelve-person jury found the defendant guilty of second degree murder on February 13, 2008.
 

 On April 23,
 
 2008,
 
 defense counsel filed a motion for new trial on behalf of Fields asserting that the verdict was contrary to both the law and the evidence. On April 25, 2008, the defendant filed a pro se motion for new trial. Both motions for new trial were denied by the trial court that day. On May 15, 2008, defense filed a habeas corpus petition and another motion for new trial, which the trial court denied. Sentencing was delayed for 24 hours and on May 16, 2008, the trial court sentenced Fields to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. On May 22, 2008, the trial court heard and denied the motion to reconsider the sentence and granted the defendant’s written motion for appeal.
 

 DEFENDANT’S ASSIGNMENTS OF ERROR
 

 The defendant’s court-appointed appellate counsel assigned one error, insufficiency of the evidence upon which to sustain the conviction. The defendant personally filed a supplemental brief in which he raised four assignments of error. His first assignment of error is the insufficiency of the evidence to establish his identity. His second assignment argues prosecutorial misconduct. His third and fourth assignments argue the ineffective assistance of his trial counsel.
 

 FACTS AT TRIAL
 

 On September 29, 2006, Mr, Miliki Tapp and the victim, Darnell Roussell, were standing behind Mr. Tapp’s vehicle, talking to an acquaintance in the 7900 |sblock of Forshey Street in the Carrollton area. The car was parked on the left side of the street, facing oncoming traffic. Mr. Tapp testified that he observed the defendant ride up on a bicycle, get off his bicycle on the same side of the street where the car was parked, enter the alley beside a house behind a fence, and come out and stand by a pole in the immediate vicinity of driver’s side door of Mr. Tapp’s automobile.
 

 Both Mr. Tapp and the victim entered the car to leave the area. As he was pulling off, Mr. Tapp testified that he saw the shadow of Fields’ arm raise up and then the driver’s side window shattered. Mr. Tapp did not look back but accelerated to leave the area, striking a car that was parked on the same side of the street. Mr. Tapp was told by the victim that he had been shot and to get him to the hospital. Mr. Tapp was unsure of the location of the nearest hospital. Because Central Lockup was nearby, he drove there as he knew police would be there and could assist the victim.
 

 Exiting Central Lockup in response to an unrelated call just as Mr. Tapp drove up with the dying victim in the front passenger seat, Officers Travis Brooks and
 
 *353
 
 Craig Johnson observed and heard Mr. Tapp calling for help. Both officers came over to the victim, and observed the victim take his last breaths. They called for medical assistance and notified the coroner’s office. Mr. Tapp told the officers that his friend had been shot by “Kenyon”. While Mr. Tapp had known the defendant for approximately two years from the neighborhood, he only knew him by his first name.
 

 Within a few hours of the killing, Mr. Tapp identified Kenyon Fields in a six photo lineup as the person who had shot the victim. At trial he positively ^identified the defendant as the perpetrator. Mr. Tapp admitted that he receives SSI.
 
 [3]
 
 The vision is his left eye is blurry. He is also was “crippled” in his right leg. He holds a current driver’s license and had passed an eye exam.
 

 Although he admitted hearing that his family members may have had a “beef’ with the defendant related to the murder of their cousin, he denied that he himself had any “beef’ with the defendant.
 

 Approximately three weeks after Mr. Roussell was killed, NOPD Detective Regina Barr observed the defendant standing on the corner of Bloomingdale Court and Thalia Street with two other men. As the detective approached the men, Fields fled towards the rear of a house on Bloomingdale. She saw the defendant throw a .45 caliber handgun under the Bloomingdale house. The detective retrieved the gun while another detective pursued and apprehended Fields behind the house. Fields gave a false name to the officers who arrested him.
 

 The handgun recovered by Detective Barr, along with the casings, bullets, and cartridges were tested by NOPD Officer Kenneth Leary, who has performed ballistics tests for over 20 years. Officer Leary confirmed that the gun recovered from under the house was the identical gun from which the shots that killed Darnell Roussell were fired.
 

 Following the reception of the foregoing evidence, the defense called two witnesses. On the morning of the second day of trial, Sarah Chervinsky photographed portions of the 7900 block of Forshey Street. She identified photographs that showed nine houses on the side of the street where Mr. Tapp’s car |swas parked, where the defendant is alleged to have retrieved a gun, and a telephone pole with vegetation growing on it. She did not know whether the crime scene looked the same on the day of the shooting as it appeared in her photographs.
 

 On October 23, 2006, the second defense witness, Nathanial Bell met Kenneth Jackson at 3235 Bloomingdale Court to bid on a remodeling job. He and Mr. Jackson were inside the residence when he heard commotion outside. When he exited the house, he observed people running away, and police everywhere. The police and the FBI apprehended several subjects in the backyard of the house and handcuffed them, including Fields. From the Gert Town neighborhood, Mr. Bell had known the defendant and his mother all of his life and he is the uncle of one of defendant’s cousins. He was unaware, however, that the defendant lived with his Aunt Cynthia next door to Mr. Bell. Mr. Bell was detained for approximately three hours, released, and never charged with any crime. Mr. Bell denied bringing the defendant to Mr. Jackson’s house on Bloomingdale Court that day.
 

 
 *354
 
 DISCUSSION
 

 Review for Errors Patent
 

 We have independently reviewed the record for errors patent. La.C.Cr.P. art. 920(2). From our inspection of the pleadings and proceedings, we have discovered no error.
 

 |
 
 insufficiency of Evidence
 

 Appellate counsel asserts that the trial court erred in denying the motion for new trial when the verdict was contrary to both the law and the evidence. He argues on behalf of the defendant that the evidence is insufficient to establish that Fields was the shooter due to deficiencies in Mr. Tapp’s ability to convincingly describe the shooter’s actions. Alternatively, counsel argues that the evidence is insufficient to exclude every possible reasonable explanation for the defendant’s innocent later possession of the weapon used in Mr. Roussell’s killing. The defendant argues on his own that the evidence was insufficient to negate the possibility that Mr. Tapp had misidentified him as the perpetrator.
 

 In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Ragas,
 
 98-0011, p. 13 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106. The Jackson standard applies to all evidence, both direct and circumstantial, to test whether it is sufficient to prove guilt beyond a reasonable doubt to a rational jury.
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 656,
 
 citing State v. Captville,
 
 448 So.2d 676, 678 (La.1984). The reviewing court, however, is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.
 
 State v. Smith,
 
 600 So.2d 1319, 1324 (La.1992). Within the bounds of rationality, the trier of fact may accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Casey,
 
 99-0023, p. 14 (La.1/26/00), 775 So.2d 1022, 1034. The fact 17finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.
 
 Id.,
 
 citing
 
 State v. Mussall,
 
 523 So.2d 1305 (La.1988).
 

 When a conviction is based upon circumstantial evidence, La. R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. This is not a separate test from
 
 Jackson v. Virginia,
 
 but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt.
 
 State v. Wright
 
 445 So.2d 1198, 1201 (La.1984).
 

 “When identity is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden to establish every element of the crime charged beyond a reasonable doubt.”
 
 State v. Weber,
 
 02-0618, p. 11 (La.App. 4 Cir. 12/4/02), 834 So.2d 540, 549. See also
 
 State v. Edwards,
 
 97-1797, pp. 12-14 (La.7/2/99), 750 So.2d 893, 902.
 

 The defendant was convicted of second degree murder which is defined in pertinent part as “... the killing of a human being: 1) When the offender has a specific intent to kill or inflict great bodily harm ...” La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1);
 
 State v.
 
 
 *355
 

 Harris,
 
 02-2434, p. 4 (La.App. 4 Cir. 5/28/03), 859 So.2d 690, 693. Firing a gun into an automobile occupied by two people is sufficient evidence of the intention to kill one or more of the occupants of the vehicle.
 
 State v. Major,
 
 96-1214, p. 8 (La.App. 4 Cir. 3/4/98), 708 So.2d 813, 818.
 

 IxWhile Mr. Tapp’s vision may have been somewhat impaired, the jury as fact finder was aware of his physical condition and, unlike a reviewing court, had the direct opportunity to observe and evaluate his ability to see what he said he saw. His eyesight was not so deficient, the jury knew, as to prevent him legally operating a motor vehicle. The sequence of events in the defendant’s arrival by bicycle, going into an alley, returning from the alley, situating himself near Mr. Tapp’s car window, raising his arm, then the window shattering, and Mr. Roussell’s being shot is alone sufficient to conclude that the defendant was the perpetrator.
 

 Minutes later, Mr. Tapp identified the defendant by his first name to the police. Within hours of the murder, Mr. Tapp had identified the defendant from a photographic line-up. Three weeks later the same man whom Mr. Tapp identified as the shooter was observed by an NOPD detective discarding the very same gun which was used to kill Mr. Roussell. Under these facts, there is no
 
 reasoyiable
 
 hypothesis of innocence which the jury disregarded.
 

 The jury was aware of the possible bias of Mr. Tapp as the defense appropriately attacked his credibility on that account. La. C.E. art. 607(B). However, a fact finder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence.
 
 State v. Huckabay,
 
 00-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093. The juiy’s decision not to discredit Mr. Tapp’s testimony was not clearly contrary to the evidence.
 

 Remaining Assignments of Error
 

 In his remaining personal assignments of error, the defendant raises issues which cannot be properly addressed in this appeal on the basis of the record before us. He complains that he requested that the gun, which Detective Barr observed |9him discard under the house, be tested for fingerprints. The weapon was not tested, he asserts, because the police knew that the testimony was false and that his fingerprints would not be discovered. He continues in this argument that the prosecutors falsely argued to the jury that they had never in their careers seen fingerprints lifted from a gun. This too he claims is false, and sought for this court to review a submission which was not part of the trial record. He also complains that his counsel was ineffective in not demanding fingerprint testing of the gun.
 

 Moreover, he complains that his trial counsel interfered with his right to expose the falsehoods of the police and prosecutors by testifying in his own defense. Also, he asserts that his trial counsel “ran [a possible defense] off’, and that his counsel was ineffective in not learning that the gun had been turned in before he was even arrested by the police.
 

 “Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief filed in the trial court, where a full evidentiary hearing can be conducted. Only if the record discloses sufficient evidence to rule on the merits of the claim does the interest of judicial economy justify consideration of the issues on appeal.”
 
 State v. Finch,
 
 02-2481, p. 6, (La.App. 4 Cir. 7/23/03), 853 So.2d 680, 683-84. This record does not contain sufficient evidence for us to evaluate these claims. We, therefore, decline to review
 
 *356
 
 these remaining assignments of error, preserving the defendant’s right to raise the issues through an appropriate and timely application for post conviction relief. La. C.Cr.P. arts. 926, 930.3(1) and 930.8.
 

 hoDECREE
 

 For the foregoing reasons, we affirm the conviction and life sentence of Kenyon Fields for the second degree murder of Darnell Roussell.
 

 AFFIRMED.
 

 [1]
 

 . Although a motion to reconsider the sentence was timely filed in the district court, which motion alleged the excessiveness of the sentence, that argument has not been pursued on appeal.
 

 [2]
 

 . The state also notified the defendant of their intent to seek the death penalty.
 

 [3]
 

 . "Supplemental Security Income” is a program administered by the federal Social Security Administration for persons with low income and who are 65 years of age or older or have some type of disability, including blindness.