PAUL A. BONIN, Judge.
| iDoretha Mosby appeals her conviction for the willful and unlawful distribution of cocaine, a controlled dangerous substance. First, contending that no rational trier of fact could have found that she engaged in a narcotics transaction, Ms. Mosby requests a Jackson v. Virginia review for sufficiency of evidence and, as her remedy, seeks the reversal of her conviction and an acquittal. Second, Ms. Mosby claims entitlement to have her conviction reversed and a new trial ordered to be undertaken *103 because of her trial counsel’s constitutionally ineffective assistance in which counsel failed to move to sever her trial from that of her codefendant, Ronnie Palmore. And third, Ms. Mosby contends that the thirty-year minimum sentence imposed upon her as a fourth felony offender under the Habitual Offender Law is unconstitutionally excessive.
Having reviewed Ms. Mosby’s claim for sufficiency of evidence under the well-known Jackson v. Virginia standard, we are satisfied that any rational trier of fact, considering the uncontradicted testimonies of the police detectives, could have found beyond a reasonable doubt that Ms. Mosby distributed cocaine to Mr. Palmore. Turning next to her ineffective-assistance-of-counsel claim, we find the record insufficiently developed for our review and reserve' Ms. Mosby’s right to | ¡.subsequently raise this claim through an application for post-conviction relief. Finally, after reviewing the presentence investigation report and the transcripts of the original sentencing and multiple bill hearings, we conclude that the sentencing judge did not abuse his considerable discretion by imposing the minimum sentence permitted under the Habitual Offender Law. We accordingly affirm Ms. Mosby’s conviction and sentence.
We explain below our reasoning for each holding.
I
In this Part we explain our holding that the detectives’ uncontradicted testimonies at trial were sufficient such that any rational trier of fact could have found beyond a reasonable doubt that Ms. Mosby distributed cocaine.
A
We first consider the essential elements of the offense for which Ms. Mosby has been convicted — distribution of cocaine.
La. R.S. 40:967 A(l) punishes the knowing or intentional distribution of controlled dangerous substances statutorily-classified in “Schedule II.” See La. R.S. 40:967 A(l). Cocaine is included in this statutory classification. See La. R.S. 40:964 A(4). “Distribution” includes, inter alia, the “physical delivery” of a controlled dangerous substance to another. See La. R.S. 40:961(14). See also State in the Interest of C.D., 11-1701, p. 10 (La.7/2/12); 93 So.3d 1272, 1278 (quoting State v. Celestine, 95-1393, p. 3 (La.1/26/96); 671 So.2d 896, 897) (“[I]n narcotics cases, distribution is ‘defined as the delivery or transfer of possession and control over controlled substances.’”) (internal quotations omitted). Thus, the essential elements of this offense, which the prosecution must prove beyond a reasonable doubt at trial, are: “(1) delivery or physical transfer; (2) guilty |sknowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance.” State v. Johnson, 01-1455, p. 5 (La.App. 4 Cir. 5/29/02); 825 So.2d 1230, 1233.
We turn now to a consideration of the trial evidence.
B
Detective Rafael Dobard testified that, on the afternoon of September 21, 2014, he was conducting surveillance of the 3800 block of Texas Drive in New Orleans, an area known for narcotics trafficking, prior to the execution of two search warrants in an unrelated matter. Detective Dobard, dressed in plain clothes and sitting inside an unmarked police unit, observed a vehicle, driven by Mr. Palmore, enter the parking area of an apartment complex. He then watched Ms. Mosby exit an apartment and join *104 Mr. Palmore inside ..of the vehicle. Detective Dobard stated that he had an unobstructed view into the front of the vehicle using binoculars. A short conversation ensued between Ms. Mosby and Mr. Pal-more. Detective Dobard then witnessed a hand-to-hand transaction during which Mr. Palmore handed money to Ms. Mosby in exchange for an unknown object. Mr. Palmore, immediately after receiving the object, raised his body off of the seat and hid the unknown object in his underwear. Ms. Mosby then exited the vehicle and returned to the apartment from which she had previously emerged; Mr. Palmore drove away.
Detective Dobard, from his extensive experience with narcotics investigations, became suspicious that the transaction involved drugs when Mr. Palmore hid the unknown object in his underwear. In response, Detective Dobard, via radio, alerted the “take-down” unit assigned to assist his surveillance, which included Detectives Quincy Jones, Wesley Humbles, and Corey Foy in two marked |4police units. Detective Dobard indicated that an investigative stop of Mr. Palmore should occur, explained the events he had just witnessed, and described the vehicle and Mr. Palmore as well as his direction of travel.
The “take-down” unit located Mr. Pal-more shortly thereafter and began to follow his vehicle. Detective Jones testified that Mr. Palmore then disregarded a street sign and was stopped shortly thereafter. After a brief investigation, Detective Jones discovered that Mr. Palmore had two outstanding arrest warrants and was driving with a suspended driver’s license. Mr. Palmore was then arrested and searched incident to that arrest by Detective Humbles. Seven pieces of crack cocaine in a plastic bag were discovered in Mr. Palmore’s underwear. Detectives Foy and Humbles confirmed this information in their testimonies.
Following the arrest of Mr. Palmore, Detective Dobard testified that he went to the apartment in which Ms. Mosby had previously entered. An unknown female answered the door; Detective Dobard could see Ms. Mosby sitting on a sofa. Detective Dobard requested that Ms. Mos-by exit the apartment, advised her of her Miranda rights, and placed her under arrest for distribution of cocaine. Detective Dobard then asked whether Ms. Mosby was in possession of any contraband; Ms. Mosby responded by removing what Detective Dobard recognized as a “crack pipe” from her brassiere and handing the pipe to Detective Dobard. No money or narcotics were recovered from Ms. Mosby; the apartment where Ms. Mosby was located was never searched.
C
The standard of review for sufficiency of evidence applicable to criminal convictions in state courts is set forth in Jackson v. Virginia. See generally 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also State v. Mathews, 375 So.2d 1165, 1167-68 (La.1979).5 This inquiry requires a reviewing court to determine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 319, 99 S.Ct. 2781.
There are several principles that guide our review under this well-known standard. First, we examine all of the evidence considered by the jury at trial. See id. Thus, we do not ignore evidence that was erroneously admitted or could have been excluded at trial, i.e., inadmissible hearsay. See State v. Hearold, 603 So.2d 731, 734 (La.1992).
*105 Second, all of the evidence is viewed in the light most favorable to the prosecution. See Jackson, 448 U.S. at 319, 99 S.Ct. 2781; State v. Fields, 12-0674, p. 6 (La.App. 4 Cir. 6/19/13); 120 So.3d 309, 315. We are not limited to the admitted evidence alone, but may also consider all reasonable inferences from that evidence which the fact-finder could have made. See Jackson, 443 U.S. at 319, 99 S.Ct. 2781. As such, when circumstantial evidence forms the basis of a conviction, such evidence must consist of “proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.” State v. Shapiro, 431 So.2d 372, 378 (La.1982).
Third, in evaluating a defendant’s challenge to the sufficiency of evidence, we are restricted to those theories actually put forth by the defense at trial. See State v. Juluke, 98-0341, pp. 4-5 (La.1/8/99); 725 So.2d 1291, 1293 (per curiam). A defendant may not simply develop a new theory on appeal and demonstrate that the evidence was insufficient to negate that new theory. See id.
And, fourth, we are highly deferential to the findings of the trier of fact. See State v. Barthelemy, 09-0391, pp. 24-25 (La.App. 4 Cir. 2/24/10); 32 So.3d 999, 161015. In criminal cases our “appellate jurisdiction extends only to questions of law.” La. Const. art. V, § 10(B). It is “the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Jackson, 443 U.S. at 319, 99 S.Ct. 2781. See also State v. Smith, 11-0664, p. 4 (La.App. 4 Cir. 1/30/13); 108 So.3d 376, 381. The trier of fact may accept as true the testimony of any witness, even a single witness, and find such testimony sufficient to establish each element of an offense beyond a reasonable doubt. See State v. Sanchell, 11-1672, p. 6 (La.App. 4 Cir. 10/31/12); 103 So.3d 677, 680.
Our review will only impinge upon this fact-finding function to the extent necessary to assure compliance with Jackson v. Virginia. See State v. Macon, 06-481, p. 8 (La.6/1/07); 957 So.2d 1280, 1285. “The Due Process Clause of the Fourteenth Amendment, the source of the Jackson [v. Virginia] standard, does not countenance, much less require, that we re-weigh testimony and witness credibility.” See State v. Gilmore, 10-0059, p. 6 (La.App. 4 Cir. 10/6/10); 50 So.3d 208, 212-13. See also Jackson, 443 U.S. at 319, 99 S.Ct. 2781. We will only tread on a jury’s presumed acceptance of a witness’ testimony when that testimony is implausible or clearly contrary to evidence. See State v. Mussall, 523 So.2d 1305, 1311 (La.1988). See also State v. Marshall, 04-3139, p. 9 (La.11/29/06); 943 So.2d 362, 369 (“Absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness’s testimony, if believed by the fact finder, is sufficient to support a factual conclusion.”); State v. Robinson, 10-0885, pp. 7-8 (La.App. 4 Cir. 12/21/10); 54 So.3d 1208, 1213.
JaP
Construing the detectives’ uncontradict-ed testimonies in the light most favorable to the prosecution, we find that any rational fact-finder could conclude that Ms. Mos-by distributed cocaine to Mr. Palmore. Ms. Mosby argues that the prosecution failed to prove beyond a reasonable doubt that a narcotics transaction occurred. But Detective Dobard testified that while on surveillance he witnessed Ms. Mosby exit an apartment and enter a vehicle driven by Mr. Palmore. Detective Dobard further testified that a hand-to-hand transaction occurred in which Mr. Palmore gave *106 money to Ms. Mosby in exchange for an unknown object. Mr. Palmore then hid the recently-acquired, unknown object in his underwear. Detectives Jones, Humbles, and Foy all testified that, shortly thereafter, during a search incident to Mr. Palmore’s arrest, seven pieces of crack cocaine were discovered hidden in his underwear.
We conclude, after construing the detectives’ plausible, uncontradicted testimonies in, the light most favorable to the district attorney, that any rational trier of fact could have found the essential elements of distribution of cocaine were proven beyond a reasonable doubt. Thus, the evidence is sufficient to sustain Ms. Mosby’s conviction.
II
Ms. Mosby contends that her trial counsel provided ineffective assistance under the Sixth Amendment to the U.S. Constitution by failing to move to sever her trial from that of Mr. Palmore. See generally Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ms. Mosby claims that this inaction and the resultant joint trial unduly prejudiced her through the introduction of evidence against Mr. Palmore that would have been ruled inadmissible against her during a separate trial.
|8We decline to review and render a decision on this assignment of error, however, as the record is not sufficiently developed. See State v. Stowe, 93-2020 (La.4/11/94); 635 So.2d 168, 173. See also State v. Ford, 09-0392, p. 5 (La.App. 4 Cir. 10/21/09); 24 So.3d 249, 253. Ineffective-assistance-of-counsel claims are usually better addressed in post-conviction proceedings, rather than on direct appeal. See State v. Deruise, 98-0541, p. 34 (La.4/3/01); 802 So.2d 1224, 1247. See also State v. Fields, 08-1223, p. 9 (La.App. 4 Cir. 4/15/09); 10 So.3d 350, 355 (noting that ineffective assistance of counsel claims are “more properly addressed in an application for post[-]eonviction relief filed in the trial court[] where a full evidentiary hearing can be conducted” and that only interests of judicial economy justify consideration of these matters on direct appeal). We reserve Ms. Mosby’s right to raise this claim through an appropriate and timely application for post-conviction relief. See La.C.Cr.P. arts. 924 et seq.
Ill
In this Part we review Ms. Mosby’s thirty-year sentence for excessiveness under Article I, Section 20 of the Louisiana Constitution. While Ms. Mosby’s private counsel did not comply with the statutory requirements for properly preserving a claim of excessiveness on appeal, see La. C.Cr.P. arts. 881.1 E; 881.2 A(l), we will nonetheless consider her assignment of error due to counsel’s oral request for downward departure from the statutory minimum and timely objection to her sentence following the multiple bill hearing. See State v. Miller, 00-0218, pp. 7-8 (La.App. 4 Cir. 7/25/01); 792 So.2d 104, 111 (citing State v. Mims, 619 So.2d 1059 (La.1993) (per curiam)).
After reviewing the presentence investigation report and the transcripts of the original sentencing and multiple bill hearings, we find that the sentencing judge [c)did not abuse his considerable discretion in imposing a thirty-year sentence, the statutory minimum, upon Ms. Mosby following her adjudication as a fourth felony offender under the Habitual Offender Law, La. R.S. 15:529.1. The sentencing judge, prior to imposing that sentence, read the contents of the presentence investigation report into the record, noted the range of sentences permitted by the Habitual Offender Law, and stated that he had *107 weighed the relevant considerations set forth in the Code of Criminal Procedure. Ms. Mosby failed to rebut the presumption of the constitutionality of her sentence and justify a downward departure from the statutory minimum.
A
Article I, Section 20 of the Louisiana Constitution prohibits any law from subjecting a person to excessive punishment. The Louisiana Constitution differs from the Eighth Amendment to the U.S. Constitution in its explicit prohibition of excessive sentences.[1] Compare La. Const. art. I, 20 with U.S. Const. amend. VIII. A sentence is constitutionally excessive if “it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of proportion to the severity of the crime.” State v. Davis, 449 So.2d 452, 453 (La.1984). The “deliberate inclusion by the redactors of the [Louisiana] Constitution of a prohibition against ‘excessive’ as well as cruel and unusual punishment broadened the duty of [courts] to review the sentencing aspects of criminal statutes.” State v. Baxley, 94-2982, p. 4 (La.5/22/95); 656 So.2d 973, 977.
| ipThe prohibition against, excessive sentences forbids their imposition not only by the judiciary but also the legislature and requires review of statutory sentencing ranges in relation to the particular offense and offender. See State v. Sepulvado, 367 So.2d 762, 766 (La.1979). “[T]he determination and definition of acts which are punishable as crimes is purely a legislative function.... It is the Legislature’s prerogative to determine the length of the sentence imposed for crimes classified as felonies.” State v. Dorthey, 623 So.2d 1276, 1278 (La.1993) (citations omitted). See also State v. Johnson, 97-1906, p. 5 (La.3/4/98); 709 So.2d 672, 675. And “[penalties provided by the [Legislature reflect the degree to which the criminal conduct is an affront to society.” State v. Hamdalla, 12-1413, p. 15 (La.App. 4 Cir. 10/2/13); 126 So.3d 619, 626 (citing State v. Landry, 03-1671, p. 8 (La.App. 4 Cir. 3/31/04); 871 So.2d 1235, 1239).
A trial judge is given wide discretion in the imposition of sentences within statutory sentencing ranges. See State v. Cann, 471 So.2d 701, 703 (La.1985). See also Sepulvado, 367 So.2d at 769. This discretion has long been established. See Dillon v. U.S, 560 U.S. 817, 828-29, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). Statutory sentencing ranges vary significantly in the degree to which they grant discretion to a sentencing judge to weigh the circumstances of the offense and mete out justice to those convicted. “In providing a wide range of criminal sanctions for violations of a statute, the legislature obviously intends that the judge shall exercise his sentencing discretion to impose sentences gradated according to the individualized circumstances of the offense and of the offender.” Sepulvado, 367 So.2d at 766. “This interactivity between the range of permissible statutory criminal sanctions and the individualized facts of each case creates a sliding, fact-variant spectrum for a trial judge’s discretion under each criminal statute for each particular criminal 1 n defendant.” Hamdalla, 12-1413, p. 15; 126 So.3d at 627. “Thus, the range of discretion granted a sentencing judge in handing down a sentence fluctuates depending on the interactivity of the facts of *108 a particular case, the permissible criminal sanctions, and the range of conduct prohibited by the particular criminal statute that the defendant is convicted of violating.” Id., 12-1413, pp. 15-16; 126 So.3d at 627.
The Legislature’s determination of the appropriate sentence for certain offenses should be afforded great deference by the judiciary. See Johnson, 97-1906, p. 6; 709 So.2d at 676. In fact, a sentencing judge must always start with the presumption that the sentence supplied by a statute is constitutional. See, e.g., id., 97-1906, p. 7; 709 So.2d at 676. This does not mean, however, that the judiciary is without authority to act, because “[n]o sentence is per se constitutional.” State v. Conner, 09-1023, p. 4 (La.App. 4 Cir. 2/3/10); 30 So.3d 1132, 1134 (citing Solem v. Helm, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). The “imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional rights against excessive punishment.... ” Cann, 471 So.2d at 703.
A sentencing judge is compelled by the Louisiana Constitution to determine whether a defendant is able to rebut the presumption of the constitutionality of a legislatively-mandated sentence by showing by clear and convincing evidence that “he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim- of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.” Johnson, 97-1906, p. 8; 709 So.2d at 676 (punctuation and citations omitted). See also State v. Pernell, 13-0180, p. 16 (La.App. 4 Cir. 10/2/13); 127 So.3d 18, 29. “Mere argument — [unsupported^ by factual evidence — that a sentence is excessive is insufficient to carry the burden of proof.” Conner, 09-1023, p. 5; 30 So.3d at 1135.
The excessiveness of a sentence is a question of law reviewable by this Court under its appellate jurisdiction. See La. Const. art. V, § 10(B). A reviewing court should not set aside a sentence imposed by a trial court absent a manifest abuse of this discretion. See State v. Batiste, 06-0875, p. 17 (La.App. 4 Cir. 12/20/06); 947 So.2d 810, 820 (emphasis added). Our review should strive only to correct “abuses of the sentencing power” by the district judge, Sepulvado, 367 So.2d at 767, and not to attempt to impose sentences that we deem more appropriate. See State v. Soraparu, 97-1027 (La.10/13/97); 703 So.2d 608 (per curiam).
In reviewing a sentence for excessiveness, we ensure that the sentencing judge took into account certain considerations prior to placing a specific defendant on a particular point in the range of statutorily-permissible sentences. The Legislature has directed the trial courts to consider certain articulable criteria contained in La. C.Cr.P. art. 894.1 when handing down sentences and to state those considerations and their factual bases for the record. See La.C.Cr.P. art. 894.1 C. In evaluating whether the trial judge has abused its broad sentencing discretion, we first examine whether the court obeyed this legislative directive. See Sepulvado, 367 So.2d at 769.
The primary purpose of La. C.Cr.P. art. 894.1 is not to enforce rigid and mechanical compliance with its provisions, but to ensure that there is a factual basis for the sentence imposed. See Batiste, 06-0875, p. 18; 947 So.2d at 820. See also State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98); 708 So.2d 813, 819. Excessiveness “analysis is cumulative and focuses on a combination of these factors.” State v. Lathers, 444 So.2d 96, 97 (La. *109 1983). “[T]hese |1scriteria provide guidance as to whether the sentence should be closer to the maximum rather than to the minimum statutory range of sentence, if the sentencing judge does indeed determine that imprisonment rather than suspension of sentence or probation is the appropriate disposition.” Sepulvado, 367 So.2d at 767-68. While the trial judge is not required to recite the entire checklist of aggravating and mitigating factors contained in La.C.Cr.P. art. 894.1, the “record must reflect that the judge adequately considered the guidelines.” State v. Soco, 441 So.2d 719, 720 (La.1983). See also State v. Square, 433 So.2d 104, 110 (La.1983). This requires consideration of those “circumstances militating for incarceration, but also any mitigating factors,” Davis, 449 So.2d at 454, including the offender’s personal history, prior criminal record, the nature and seriousness of the offense, and the likelihood of rehabilitation or recidivism. See Soco, 441 So.2d at 720. See also State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982); State v. Telsee, 425 So.2d 1251, 1253 (La.1983).
Importantly, La.C.Cr.P. art. 894.1 is “not an exclusive listing of factors to be considered in imposing a sentence. Any and all relevant factors can and should be taken into account by the trial court.” State v. Lanclos, 419 So.2d 475, 478 (La.1982). “Permitting sentencing courts to consider the widest possible breadth of information about a defendant ‘ensures that the punishment will suit not merely the offense but the individual defendant.’ ” Pepper v. U.S., 562 U.S. 476, 131 S.Ct. 1229, 1240, 179 L.Ed.2d 196 (2011) (quoting Wasman v. U.S., 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984)). For example, the defendant’s truthfulness or lack thereof may be weighed by the court in sentencing but is not alone a sufficient basis for the imposition of a relatively harsh penalty. See Quebedeaux, 424 So.2d at 1014. See also State v. LaFleur, 391 So.2d 445, 447 (La.1980). A judge also has discretion to hear a defendant’s allocution 114presentencing and consider her statement when determining the appropriate sentence for that defendant. See La.C.Cr.P. art. 871 cmt. c. See also State v. Hamdalla, 12-1413, pp. 17-18; 126 So.3d at 628. Sentencing judges may also consider plea bargains and the details of those offers as circumstances surrounding the offense. Lanclos, 419 So.2d at 478.
In order to aid the judge in comprehensively evaluating a defendant under La.C.Cr.P. art. 894.1, a “court may order the Department of Public Safety and Corrections, division of probation and parole, to make a presentence investigation.” La.C.Cr.P. art. 875 A(1). A presentence investigation report is an excellent instrument to assist the sentencing judge in substantively evaluating the factors in Article 894.1 as well as provide us with a complete record in reviewing sentences for excessiveness. See Conner, 09-1023, pp. 4-5; 30 So.3d at 1135. See also La. C.Cr.P. arts. 881.3; 877. The criminal defendant has a right to examine this report as “[f]undamental fairness ... requires that the substance of all derogatory information which adversely affects his interest and which has not otherwise been disclosed in open court should be called to the attention of the defendant, his attorney, and others who are acting on his behalf.” State v. Bosworth, 360 So.2d 173, 175 (La.1978) (internal quotations and citations omitted). “When, in imposing a heavy sentence, the trial court relies upon pre-sentence information which is materially false or which furnishes invalid information, the defendant must be given an opportunity to deny or explain such substantially significant misinformation.” Id. See also State v. Ray, 423 So.2d 1116, 1121 *110 (La.1982). This is usually done through a sentencing hearing, at which time the defendant is allowed to introduce sentence-influencing factors and considerations. See Sepulvado, 367 So.2d at 769.
|1sWhen ruling on a claim of excessiveness, the importance of holding a full evidentiary hearing can hardly be overstated. See Conner, 09-1023, p. 5; 30 So.3d at 1135 n. 4. “The only opportunity for review of the sentencing decision is on direct appeal as there is no post-conviction review available on such claim.” Id. (citing State ex rel. Melinie v. State, 93-1380 (La.1/12/96); 665 So.2d 1172 (per curiam)). Moreover there is no post-conviction review available for claims of ineffective assistance of counsel at sentencing. See id. (citing State v. Thomas, 08-2912 (La. 10/16/09); 19 So.3d 466). Thus, as all other avenues of review are unavailable, a sentencing judge should permit a defendant to introduce evidence to substantiate her claim at the hearing on the motion, because, in the absence of evidence, there is nothing for this Court to review on appeal. See id., 09-1023, p. 5; 30 So.3d at 1135 (citing State v. Allen, 09-0813, pp. 6-7 (La.App. 4 Cir. 1/13/10); 30 So.3d 1024, 1027-28). Sentencing hearings are also a helpful practice to avoid remands to determine the basis of a sentence. See id. See, e.g., State v. Pernell, 14-0678 (La.App. 4 Cir. 10/15/14); 151 So.3d 940, 945. Errors committed in presentence investigations and sentencing hearings should be reviewed to determine if they caused prejudice to the defendant. See State v. Guiden, 399 So.2d 194, 200 (La.1981).
If we find that the district court properly considered the sentencing criteria in La.C.Cr.P. art. 894.1, we should then determine whether the defendant’s sentence shocks the court’s sense of justice in its disproportionality as to the facts and circumstances of this crime and this defendant. See State v. Reed, 409 So.2d 266, 267 (La.1982). In order to more thoroughly review sentences in this manner, courts have analyzed the sentence through a comparator. See Square, 433 So.2d at 110. See also Telsee, 425 So.2d at 1254; State v. Guajardo, 428 So.2d 468, 472 (La.1983); Hamdalla, 12-1413, p. 19; 126 So.3d at 629.
This review, however, must still only be for abuse of the trial court’s broad sentencing discretion. See State v. Walker, 00-3200, p. 2 (La.10/12/01); 799 So.2d 461, 462 (per curiam). An appellate court “shall not set aside a sentence for exces-siveness if the record supports the sentence imposed.” La.C.Cr.P. art. 881.4 D. “[G]reat weight must be given to [a sentencing judge’s] factual characterizations of the aggravating and mitigating circumstances justifying more severe punishment.” Sepulvado, 367 So.2d at 767. “[A] remand for resentencing is appropriate only when there appears to be a substantial possibility that the defendant’s complaints of an excessive sentence have merit.” Soraparu, 97-1027; 703 So.2d 608. (internal quotations and punctuation omitted).
B
We next examine the statutes under which Ms. Mosby was sentenced and determine the sentencing range mandated to be imposed in this case.
As previously stated, Ms. Mosby was convicted of distribution of cocaine, a violation of La. R.S. 40:967 A(2). The statutory sentencing range for a violation of this statute is a term of imprisonment of two to thirty years. See La. R.S. 40:967 B(4)(b). Following the imposition of a ten-year sentence at the original sentencing hearing, the district attorney then charged and adjudicated Ms. Mosby as a fourth felony offender under the Habitual Offender *111 Law.[2] This adjudication enhanced the 117sentencing range statutorily-mandated to be imposed upon Ms. Mosby to a term of imprisonment of 30 years to the remainder of Ms. Mosby’s natural life. This sentencing range was calculated by first examining the Habitual Offender Law, which provides in relevant part: “If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then ... [t]he person shall be sentenced to imprisonment ... for a determinate term not less than the longest prescribed for a first conviction [of the underlying, most recent offense] ... and not more than his natural life.... ” La. R.S. 15:529.1 A(4)(a). Thus, the sentencing judge’s imposition of a thirty-year sentence upon Ms. Mosby was, in fact, the minimum permitted as that sentence is the longest prescribed for a first conviction for distribution of cocaine.
C
Having determined that Ms. Mos-by received the minimum sentence permitted by statute, we next review that minimum sentence for excessiveness. We find that the sentencing judge did not abuse his considerable discretion in imposing the statutory minimum. The trial judge held a sentencing hearing during which Ms. Mosby was permitted but declined to introduce evidence to substantiate her claim; Ms. Mosby failed to rebut the presumption of the constitutionality of her sentence. The trial judge, in imposing sentence thereafter, substantively complied with the legislative directive to consider the factors set forth in Article 894.1.
Following Ms. Mosby’s conviction for distribution of cocaine and prior to her initial sentencing, the judge ordered that a presentence investigation be | ^undertaken and a report written. See La.C.Cr.P. art. 875. The presentence investigation report documented several relevant issues to Ms. Mosby’s sentencing. First, Ms. Mosby has an extensive criminal history. Ms. Mosby has been charged with ten and convicted of five other offenses over the course of her life. The presentence investigation report noted that Ms. Mosby’s “criminal activity began late in life.” Ms. Mosby’s first conviction for any offense occurred at age 52. In 1971 she was charged with attempted murder; those charges were eventually refused. Ms. Mosby was then accused of committing two crimes related to her ownership of the “Sorrento” bar in the uptown neighborhood of New Orleans in 1976 and 1977. No disposition was found as to those cases, however. In 1995, 1996 and 1997, she was charged with and convicted of possession of Schedule II controlled dangerous substances. In 1997 she was also charged with and convicted of possession of LSD. In 2006, Ms. Mosby was charged with theft of goods and unauthorized entry of a place of business. The theft charges were eventually dismissed, but Ms. Mosby was convicted of unauthorized entry. Finally, in 2011, fourteen days prior to being arrested for this charge, Ms. Mosby was arrested for possession with the intent to distribute cocaine. Those charges were still pending as *112 of the creation of this presentence investigation report.
Second, Ms. Mosby is currently 72 years old. She has lived in New Orleans since she was four years old. Ms. Mosby obtained a GED and worked for South Central Bell for twenty years. Ms. Mosby began using crack cocaine when she was 48 years old. Her frequency of use increased as time passed. Ms. Mosby described her daily use as “casual” and stated she does not feel that her drug use was a problem because she has never turned to robbing, stealing, or prostitution to fuel 1 Ulher habit. The presentence investigation report states that Ms. Mosby is “unrepentant regarding her substance abuse.”
After the presentence investigation report was produced, a sentencing hearing was held during which the sentencing judge noted that the district attorney had not yet filed a bill charging Ms. Mosby under the Habitual Offender Law. The sentencing judge, proceeding with the hearing, read the contents of the report into the record, including Ms. Mosby’s criminal and social history. The court also noted Ms. Mosby’s willingness to participate in substance abuse programs and that she was offered an opportunity to plead guilty and accept a ten year sentence. The court also made several other comments. The judge expressed confusion as to why Ms. Mosby became involved with drugs so late in life and regret that he did not preside over her conviction in 1999 when there was still an opportunity to resolve her problems. The sentencing judge then noted that he had considered the relevant provisions of the Louisiana Code of Criminal Procedure, the facts of this case, and Ms. Mosby’s criminal history and imposed a ten-year sentence at hard labor in the custody of the Department of Corrections. Ms. Mosby did not request an opportunity to confess to the offense and continues to deny selling cocaine to Mr. Palmore. Ms. Mosby did not introduce any evidence or call any witnesses to testify in order to contradict the information contained in the presentence investigation. The sentencing range following her conviction for distribution of cocaine was two to thirty years. See La. R.S. 40:967 B(4)(b). Trial counsel for Ms. Mos-by failed to object to that sentencing.
Following that sentencing, the district attorney charged Ms. Mosby as a fourth felony offender under the Habitual Offender Law. At the multiple bill hearing, the prosecution presented evidence of the requisite underlying offenses to ^substantiate her status as a fourth felony offender. Ms. Mosby chose not to call any witnesses or introduce any evidence at this hearing either. Rather, counsel for Ms. Mosby argued that the sentence imposed upon Ms. Mosby should be below the minimum sentence mandated by the Habitual Offender Law. Counsel argued that Ms. Mos-by’s age and the lack of violent crime in her criminal history justified this downward departure. The sentencing judge then found Ms. Mosby to be a fourth felony offender. The judge noted that, in determining the appropriate sentence for Ms. Mosby, he had considered the relevant provisions of the Code of Criminal Procedure, the range of sentences permitted under the Habitual Offender Law, and Ms. Mosby’s criminal history. The sentencing judge then rejected Ms. Mosby’s counsel’s request for a downward departure and imposed the mandatory minimum sentence — 30 years at hard labor without the benefit of probation or suspension of sentence.
Based on this record, we cannot say that Ms. Mosby’s situation is one of those rare cases deserving of a downward departure from the minimum sentence permitted by the Habitual Offender Law. See Johnson, *113 97-1906, p. 8; 709 So.2d at 677. The sentencing judge properly considered Article 894.1 and other facts in imposing a sentence particularized to Ms. Mosby. As such, her sentence is not excessive under Article I, Section 20 of the Louisiana Constitution.
DECREE
The conviction of Doretha Mosby for distribution of cocaine is affirmed. The imposition of the minimum sentence of thirty years at hard labor without the possibility of probation or suspension of sentence is also affirmed.
AFFIRMED
BELSOME, J., dissents with reasons.

. A sentence is the penalty imposed by the court upon a verdict of guilty. Sentence shall be pronounced orally in open court and recorded in the minutes of the court. See La. C.Cr.P. art. 871.

. "[T]he purpose of the Habitual Offender Law ... is to discourage commission of successive felonies and to enhance punishment for subsequent felonies.” State v. Shaw, 06-2467, p. 17 (La.11/27/07); 969 So.2d 1233, 1243 (internal quotations omitted). The statute was enacted "as a deterrent and a warning to first offenders and as a protection to society by removing the habitual offender from its midst. The habitual offender statute does not create a separate offense or punish an individual for past crimes; rather, the statute increases punishment on the basis of an individual’s status as a repeat offender.” Id. (internal citations omitted).